**Louis SAGER and Sarah Sager, his wife,**

**v.**

**BURGESS and Borough Council of Pottstown et al.**

**Civ. A. No. 72–1115.**

United States District Court,
E. D. Pennsylvania.

Nov. 20, 1972.

---

as a class action under Fed.R.Civ.P. 23, for a declaratory judgment which seeks an adjudication to the effect that the Pennsylvania Municipal Claims Act, Act of May 16, 1923, P.L. 207, as amended, 53 P.S. § 7101 et seq. unconstitutionally deprives plaintiffs of property without due process of law which is guaranteed by the Fourteenth Amendment to the United States Constitution.[1]

On May 10, 1971, during the course of a public meeting the Borough Council of Pottstown enacted an Ordinance authorizing the paving of certain streets, including a portion of King Street between Adams Street and Bailey Street, the abutting properties to be assessed with a proportionate share of the cost of the paving.

On May 15, 1971, notice of said Ordinance was published in a newspaper of general circulation.

On November 15, 1971, the Borough Engineer certified that the construction and paving of a portion of King Street between Adams Street and Bailey Street was completed.

On November 17, 1971, the Borough of Pottstown served notice by certified mail to the plaintiffs that according to the provisions of Ordinance No. 1252 and the Acts of the Assembly of the Commonwealth of Pennsylvania made and provided, that the plaintiffs were thereby notified that an assessment of $554.35 was made against the plaintiffs.

The plaintiffs repeatedly questioned the validity of the assessment and requested an opportunity for a hearing prior to any lien being placed on the property. On May 8, 1972, the Borough Council passed a resolution denying the plaintiffs' request.

On May 12, 1972, the Borough of Pottstown caused a lien to be filed against the property of the plaintiffs for the amount of the assessment.

Since the facts are not in dispute and have been stipulated there is presented solely an issue of law.

Lawrence Sager, Pottstown, Pa., for plaintiffs.

Ronald H. Reynier, Pottstown, Pa., James R. Adams, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

Before GIBBONS, Circuit Judge, and WEINER and BECHTLE, District Judges.

## MEMORANDUM OPINION

WEINER, District Judge.

This is an action under the Civil Rights Act (42 U.S.C. § 1983), brought

---

1. A three Judge court had been convened pursuant to 28 U.S.C. § 2281.

■ The plaintiffs' case is predicated upon their contention that the provisions of the challenged Act which permits a municipality without a hearing to impose a lien upon their property constitutes a denial of due process of law. In support of their position plaintiffs rely on Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), (due process of law prohibits a State from denying, solely because of inability to pay court fees and costs, access to its courts to indigents who, in good faith, seek judicial dissolution of their marriage); Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), (the double-bond provision as a prerequisite for appealing a landlord and tenant eviction statute violates that equal protection guaranteed by the Fourteenth Amendment); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), (Florida and Pennsylvania replevin provisions held constitutionally defective in failing to provide a hearing at a meaningful time); Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970), (distress sales under distraint procedures of Pennsylvania Landlord and Tenant Act amount to a taking of property without procedural due process insofar as sales do not follow a hearing of some sort before the tenant is deprived of his property).

At this juncture it would appear appropriate to point out that the Commonwealth of Pennsylvania, and the City of Scranton were permitted to intervene as a party-defendant; Community Legal Services (CLS) and Pennsylvania State Associations of Township Supervisors and Pennsylvania State Association of Boroughs were granted leave to appear as Amicus Curiae. Significantly, the Commonwealth urges this Court to adopt the view proffered by the plaintiffs claiming that the present procedure for enforcing municipal liens in Pennsylvania is unconstitutional.

A review of the pertinent Acts will be of assistance in our determination of the constitutional issue. The Borough Code, 53 P.S. § 46761, et seq. in relevant part provides:

"Boroughs . . . may improve streets, or parts thereof . . . and may assess and collect the whole cost thereof, . . . or any part thereof, from the owners of real estate abutting on the improvement . . . . ." 53 P.S. § 46761.

Section 46762 of the Code states:

"The borough secretary of the borough shall cause thirty days' personal notice of the assessment to be given to each party assessed."

Followed by Section 46763, which in relevant part directs that:

"If any assessment shall remain unpaid at the expiration of the notice, it shall be the duty of the borough solicitor to collect the same . . . by action of assumpsit, or by lien to be filed and collected in the same manner as municipal claims."

The Municipal Claims Act permits any defendant named in the claim to present a defense by either paying the amount of the claim into court or to enter security in lieu of the claim. 53 P.S. § 7182.

■ The plaintiffs cite Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) for the proposition "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." A lien is a property right. In re Pennsylvania Central Brewing Co., 114 F.2d 1010, 1013 (3d Cir.), cert. denied, 312 U.S. 685, 61 S.Ct. 612, 85 L.Ed. 1123 (1940). In addition it is contended that the requirement that security be entered before a hearing is granted "unconstitutionally forecloses access by many property owners to the only available body authorized to adjudicate their rights" and also "favors the rich over the poor, thus denying indigent property owners equal protection of the law."

We are persuaded that in the context of the cases cited and relied upon by the plaintiffs that the due process clause of the Fourteenth Amendment requires that a meaningful hearing be made available prior to the taking of property. However, we are not convinced that these cases have the far reaching impact which plaintiffs would have us impose upon the Municipal Claims Act. In *Wagner v. Baltimore,* 239 U.S. 207, (1915), a public highway had been paved with improved paving and a special tax was imposed on the abutting landowners who urged that they were given no opportunity to be heard as to the amount of the benefits conferred upon them, and the proper adjustment of the taxes among property owners. In summarizing the state of the law on this subject the Court observed:

" . . . We think such a tax, when levied by the legislature, did not require notice and a hearing as to the amount and extent of benefits conferred in order to render the legislative action due process of law within the meaning of the Federal Constitution." *Id.* at 218, 36 S.Ct. at 69.

*Withnell v. Ruecking,* 249 U.S. 63, 39 S.Ct. 200, 63 L.Ed. 479 (1919) is also an instructive case. In *Withnell,* a construction company brought suit to enforce the lien of tax bills issued on account of the cost of paving a portion of a public street. The thrust of the constitutional objection was that the adjoining landowners were not permitted to be heard as to the validity and apportionment of the assessment, and were therefore denied due process of law. The Court concluded "[T]hat the attack upon the validity of the assessment for want of advance notice of hearing as to benefits must fail." 249 U.S. 70, 39 S.Ct. 201.

Although we have found no case on all fours with the circumstance of the case at bar we believe that the decisions in *Wagner* and *Withnell* indicate the course which we should follow here. We do not construe the procedures adopted by the defendants in causing a lien to be impressed upon abutting properties to be so fundamentally unfair as to constitute a denial of due process. We do not think that the failure to provide a hearing prior to the imposition of the lien violates the due process tenets of the Constitution. Since the plaintiffs have not introduced any evidence to establish that they are persons of low income and unable to post a bond we find it unnecessary to reach this alleged ground of unconstitutionality.

It is to be noted that access to the Courts is afforded a property owner who desires to challenge the legality of an ordinance or to present a defense to the propriety of a lien.

"Complaint as to the legality of any ordinance . . . may be made to the court of quarter sessions, upon entering into recognizance with sufficient surety to prosecute the same with effect and for the payment of costs, by any person aggrieved, within thirty days after the enactment of any ordinance . . . and the determination and the order of the court thereon shall be conclusive." 53 P.S. § 46010.

Section 7184 of the Municipal Claims Act, supra, furnishes a property owner with an opportunity to file and serve notice on the municipality to issue a writ of scire facias within fifteen days after notice so to do. All defenses may be raised in such a proceeding. Cf. New Kensington v. Gardner, 372 Pa. 72, 76, 92 A.2d 685 (1952); 12 G. Mottla, Standard Pennsylvania Practice, ch. 52, at § 42 (1964).

We do not deprecate Fourteenth Amendment rights. The security of property remains a fundamental value which commands respect. In sustaining the constitutional validity of the Municipal Claims Act, this Court also determined that a compelling state interest prevails over that of the individual prop-

erty owner. See: Snidach v. Family Finance Corporation, 395 U.S. 337, 89 S. Ct. 1820, 23 L.Ed.2d 349 (1969). It is common knowledge that a municipality finances its public improvements either through its tax revenue or through other assessments that it levies. If the municipal improvement is a large one and the term of years over which the taxes or assessments to pay for the improvement will be long, the municipality can resort to a bond issue wherein it pledges its revenue over that long term of years in return for the immediate fund with which to pay the contractors and other persons engaged to install the public improvement. A municipality could also go the municipal authority route whereby a special separate authority is created under the Municipality Authorities Act of 1945 (1945 May 2, P.L. 382, 53 P.S. 301 et seq.). That municipality entity issues the bonds and secures from the municipality a pledge of the municipality's future revenue or a promise by the municipality to adopt ordinances and impose assessments in order to assure recovery of the funds from land owners that in turn will make the bonds secure on the public market. From which either source the money comes, the cost of the public improvement must be fixed by the municipality with virtual certainty in advance of financing programs and entering into binding contracts that will be relied upon to borrow money or sell bonds. For example, if the funds are to come from the operating budget of the municipality, every item in that budget must be approved and adopted by the municipality and every dollar must be traceable to a known source of revenue, whether it be an assessment or a fund to be realized from a bond issue. Both of these sources in turn can only be ascertained if the assessed valuation of the township's real estate is fixed, if a millage rate is fixed, if the front-foot formula of a public improvement is fixed, and if the extent of the work, the responsibly calculated cost of the work, and the time when it is to be done is ascertained. The key, however, is that all these items must be rendered certain *in advance*. The municipality can only purchase the necessary services for public safety, health, welfare, recreation, public improvements, etc., if it is known with some degree of precision exactly the extent to which it must make out-lays for these needs in advance of the time when the work and services are to be contracted for and the municipality lawfully bound to pay for them.

If challenges to assessments could be routinely and sporadically made by every effected person it would obviously erode the underpinning of every municipal budget and financial program. It would prevent the sale on the public market of municipal bonds because of the uncertainty of the security supporting the obligation of the municipality to fulfill its promise to pay the principal and interest of the bonds during the maturing process. It would prevent a municipal authority from determining the extent to which it could expect sewer rentals, or other similar public improvement rentals, from the subject matter of its financing program with the consequence that it could not be relied upon to meet its obligations to the bond holders who are relying on a reasonably fixed flow of income as a condition for the pledge of their resources to the public program. The heart of municipal finance is the municipality's ability to have resources fixed and pledged in advance so that the potential public investor can recognize that the security he is about to buy is a stable one.