## CITY OF PHILADELPHIA

### v.

### Raymond PERFETTI, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 6, 2015.

Decided June 8, 2015.

David Denenberg, Philadelphia, for appellant.

Gerald T. Clark, Philadelphia, for appellee.

BEFORE: DAN PELLEGRINI, President Judge, RENÉE COHN JUBELIRER, Judge, ROBERT SIMPSON, Judge, MARY HANNAH LEAVITT, Judge, P. KEVIN BROBSON, Judge, PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge ROBERT SIMPSON.

In these consolidated appeals, Raymond Perfetti (Perfetti) appeals from four orders of the Court of Common Pleas of Philadelphia County (trial court) that entered judgment in favor of the City of Philadelphia (City), directing Perfetti to pay municipal liens for want of a sufficient affidavit of defense under Section 19 of the Municipal Claims and Tax Liens Act (MCTLA).[1] Perfetti argues imposing the liens without prior notice or hearing violated his constitutional due process rights as the debt arose from his former tenants' non-payment of gas bills. He asserts the liens constitute a deprivation of property that required notice in sufficient time to allow recovery from his tenants. Upon review, we affirm.

## I. Background

Perfetti has owned 1908 East Passyunk Avenue, Philadelphia (the Property) since 1965 and leases commercial and residential units therein. Pursuant to the lease terms, Perfetti's tenants were responsible for paying their own gas bills. The leases did not contain any terms obliging tenants to warrant payment of their gas bills or to grant Perfetti access to their payment histories.

The current matter stems from the failure of some of Perfetti's tenants, stretching back more than a decade, to pay their gas bills. Reproduced Record (R.R.) at 37a; see, e.g., Response to Motion for Judgment, Supplemental Reproduced Record (S.R.R.) at B39. Despite non-payment, the City continued to provide gas service to the Property after each tenant vacated the Property.[2] Relevantly, the City did not give notice to Perfetti of his tenants' delinquencies.

On January 14, 2011, the City placed four liens on the Property corresponding to each unpaid gas bill, totaling $1499.36[3] (Liens). The City did not attempt to execute upon the Liens. The City did not notify Perfetti of the Liens. Perfetti discovered the Liens three years later while conducting a title search on the Property. R.R. at 38a. By the time Perfetti discovered the Liens, he was unable to seek contribution from his former tenants through breach of contract actions because the statute of limitations expired. R.R. at 36a.

Shortly after his discovery, Perfetti filed four "Notice[s] to File/Issue Scire Facias"[4] pursuant to the MCTLA. The City then filed praecipes for writs to issue, and

---

1. Act of May 16, 1923, P.L. 207, as amended, 53 P.S. § 7271 (stating "[i]f an affidavit of defense [is] filed, a rule may be taken for judgment for want of sufficient affidavit of defense.").

2. Addressing the delay, counsel for the City at argument suggested that, given the modest amounts of the aged gas bills involved, the City did not take steps toward payment until prompted by the Pennsylvania Public Utilities Commission to attend to its receivables.

3. Municipal Lien 110130799 was for $597.40, Supplemental Reproduced Record (S.R.R.) at B17; Municipal Lien 110130800 was for $247.77, S.R.R. at B100; Municipal Lien 110130801 was for $252.95, S.R.R. at B185;

and, Municipal Lien 110130802 was for $401.57, S.R.R. at B270.

4. This Court described a writ of scire facias as follows:

The object of the writ of scire facias is ordinarily to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the plaintiff should not have execution. The writ of scire facias serves the dual purposes of a summons and a complaint, and a writ of scire facias is personal process, but the detailed requirements of a pleading are not applied to the writ of scire facias.

*Shapiro v. Center Twp., Butler Cnty.*, 159 Pa. Cmwlth. 82, 632 A.2d 994, 997 n. 3 (1993).

the Prothonotary of the trial court issued four writs.[5] In response, Perfetti filed four affidavits of defense. In his affidavits of defense, Perfetti claimed the Liens should be stricken for two reasons: (1) the claims were barred by the statute of limitations; and, (2) the liens were imposed in violation of his due process rights under the Fourteenth Amendment to the United States Constitution.

The City filed motions for judgment arguing Perfetti's affidavits presented no viable defense or legal authority to challenge the writs. After receiving Perfetti's responses to the City's motions, the trial court held a consolidated hearing on all four Liens. Thereafter, the trial court granted the City's motions for judgment in four orders. Perfetti filed motions for reconsideration, which the trial court denied.

Perfetti appealed the orders. Upon direction by the trial court, he filed a Concise Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b). In its Rule 1925(a) opinion, the trial court addressed Perfetti's constitutional due process arguments. *See* Tr. Ct., Slip Op., 12/16/14, at 5–6. It noted Perfetti abandoned his argument that the statute of limitations barred the Liens. The trial court reasoned that providing notice prior to filing the Liens was not constitutionally mandated because Perfetti was able to ensure proper payment for gas services that benefited the Property through the terms of the lease.

## II. Discussion

The pertinent facts are undisputed. The City imposed the Liens on the Property based on unpaid gas bills incurred by Perfetti's tenants. Perfetti was unaware of the delinquencies, and the City did not interrupt gas service to the Property. Perfetti discovered the Liens approximate-

ly three years after the City filed them. He asserted lack of notice and process as defenses to the Liens.

As the material facts are not in dispute, this appeal raises a pure question of law. Therefore, our review is plenary. *Pennock v. Lenzi*, 882 A.2d 1057 (Pa.Cmwlth. 2005).

Perfetti argues the City violated his constitutional due process rights under the Fourteenth Amendment of the United States Constitution by imposing the Liens upon the Property without prior notice or hearing. As such, he challenges the constitutionality of the MCTLA as applied in these circumstances. We begin with a review of the process required by the MCTLA.

### A. MCTLA Process

The current procedure for enforcing municipal claims, including in cities of the first class, is set forth in the MCTLA. "The [MCTLA] provides for a specific, detailed and exclusive procedure that must be followed to challenge or collect on a municipal lien...." *City of Phila. v. Manu*, 76 A.3d 601, 604 (Pa.Cmwlth.2013). Section 3(a)(1) of the MCTLA authorizes municipalities to file liens on properties that will have priority over all other encumbrances, except taxes, tax liens or tax claims. 53 P.S. § 7106(a)(1); *see Shapiro v. Center Twp., Butler Cnty.*, 159 Pa. Cmwlth. 82, 632 A.2d 994, 997 (1993) ("The assessment and imposition of the lien occur without any form of hearing.") Once a lien is recorded, a property owner may challenge the municipal lien.

■ Under Section 16 of the MCTLA, a property owner may dispute a lien by requesting a lienholder to issue a writ of scire facias. 53 P.S. § 7184. A municipal-

---

**5.** The legal issues in the writs/affidavits are identical, as only the lien amount differs.

ity may also pursue a writ without the owner filing notice. *N. Coventry Twp. v. Tripodi,* 64 A.3d 1128 (Pa.Cmwlth.2013). Alternatively, both parties may choose to do nothing and "[let] the municipal lien remain recorded indefinitely subject to revival of the lien in every twenty years...." *Borough of Ambler v. Regenbogen,* 713 A.2d 145, 148 (Pa.Cmwlth.1998). "After the lienholder issues the writ, the owner may file an affidavit, pursuant to 53 P.S. § 7182, raising defenses to the lien, such as actual payment of taxes, a defective claim or lien, fraud, or *lack of process or notice.*" *Roethlein v. Portnoff Law Assoc., Ltd.,* 623 Pa. 1, 81 A.3d 816, 818 (2013) (emphasis added).

Scire facias is an *in rem* proceeding in which a lien is placed on the property receiving municipal services. *See* Section 4 of the MCTLA, 53 P.S. § 7107 ("The lien for ... water rates, lighting rates, or sewer rates, or rates for any other service furnished by a municipality,—shall exist in favor of, and the claim therefor may be filed against the property thereby benefited by, the municipality [...]."); *W. Clinton Cnty. Mun. Auth. v. Estate of Rosamilia,* 826 A.2d 52, 56 (Pa.Cmwlth.2003) (the writ is a "means of enforcing payment of a municipal claim out of the real estate upon which such claim is a lien"). The reason for imposing the lien on the property as opposed to the person allegedly responsible for the delinquency is that the property received the benefits of municipal services, not the person. *See City of Phila. v. Northwood Textile Mills, Inc.,* 395 Pa. 112, 149 A.2d 60 (1959).

▪■ Accordingly, the owner is responsible for municipal liens on the property. *Id.* at 62 ("[T]he sole and primary duty for the payment of this charge is that of the owner. Any delegation of this duty does not relieve the owner without the consent of the party to whom the duty is owed ..."). Section 1 of the MCTLA defines the term "owner," in pertinent part, as "[t]he person or persons in whose name the property is registered, if registered according to law, and, in all other cases, means any person or persons in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, if any, or the reputed owner or owners thereof in the neighborhood of such property." 53 P.S. § 7101. Generally, the record owner is the "owner" for the purposes of satisfying the requirements of the MCTLA and the procedures to be used to collect municipal claims. *City of New Castle v. Uzamere,* 829 A.2d 763 (Pa. Cmwlth.2003).

As owner of the Property, Perfetti is the party responsible for satisfying the debt secured by the Liens. Thus, he availed himself of this process and filed affidavits of defense to the Liens here. Lack of notice or process is a proper defense. *See Roethlein.*

There is no dispute that the municipal liens were filed in accordance with the MCTLA. The MCTLA itself does not require notice or an opportunity to be heard prior to placing a municipal lien on property. Further, the MCTLA does not contain a statute of limitations, allowing a municipality to file a lien to secure municipal debts for utilities at any time. 53 P.S. § 7432.[6]

Perfetti argues the trial court erred by granting the City's motions for judgment because the City's failure to provide pre-lien notice or an opportunity to be heard deprived him of property in violation of the Due Process Clause of the Fourteenth Amendment. Perfetti acknowledges the MCTLA does not limit the City's time-

---

**6.** Act of September 23, 1959, P.L. 955, *as amended.*

frame for filing a lien. Nonetheless, he contends the City's failure to provide notice within a reasonable time precluded him from pursuing breach of contract claims against his former tenants. He also asserts the City encumbered the Property without affording a meaningful opportunity to be heard.

First, we consider whether the Due Process Clause in the Fourteenth Amendment to the United States Constitution requires that Perfetti receive process beyond that outlined in the MCTLA.

## B. Constitutional Due Process

The U.S. Supreme Court holds that a lien on real property constitutes a deprivation of property entitled to due process protections. *Conn. v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (involving a statute permitting any plaintiff to file an attachment against a defendant's property before hearing the claim). Traditionally, due process is recognized as encompassing the right to notice and the opportunity to be heard. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). The timing of the notice and of the hearing depends on the circumstances and the interest to be protected. *Id.*

### 1. Pre-lien Hearing

■ Perfetti contends he is entitled to "some kind of hearing" prior to any deprivation of a property interest. In so arguing, he equates the Liens to a taking or seizure of property that deprives an owner of its use or possession.

The City counters that the MCTLA does not require a pre-lien hearing, and the statutory process satisfies constitutional due process. The City asserts Pennsylvania courts considered and rejected Perfetti's argument, finding a post-lien hearing constitutes sufficient process as a matter of law.

The U.S. Supreme Court upholds deprivations of property without a full evidentiary hearing prior to the deprivation in contexts where the governmental interest was great compared with the impact on the private interest. *See Fuentes v. Shevin*, 407 U.S. 67, 92, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (no predeprivation hearing required "to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food.") (footnotes omitted). Here, the governmental interest is predictable municipal finances and recovery for municipal services rendered.

Pennsylvania state and federal courts consistently hold the lack of a pre-lien hearing in the MCTLA does not violate constitutional due process. *See U. Gwynedd Twp. Auth. v. Roth*, 113 Pa.Cmwlth. 239, 536 A.2d 875 (1988); *Sager v. Burgess*, 350 F.Supp. 1310, 1312 (E.D.Pa.1972), *summarily aff'd*, 411 U.S. 941, 93 S.Ct. 1923, 36 L.Ed.2d 406 (1973). When asked to evaluate whether the MCTLA comports with constitutional due process, this Court follows *Sager*. *See Shapiro; U. Gwynedd Twp. Auth.*

In *Sager*, property owners brought a class action under Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983, seeking a declaration that the MCTLA deprived them of property in violation of their due process rights under the Fourteenth Amendment to the United States Constitution. There, the property owners argued the Due Process Clause required the borough to conduct a hearing prior to filing a lien on their property as a result of a failure to pay an assessment imposed pursuant to a street paving ordinance. *Id.*

Due to the compelling state interests associated with municipal financing, the district court held that no pre-lien hearing was required. *Id.* at 1313–14. The U.S. Supreme Court summarily affirmed the decision of the district court, rejecting the constitutional challenge.

■ The district court reasoned that the defense process set forth under Section 16 of the MCTLA, 53 P.S. § 7184, satisfied due process despite the lack of a pre-deprivation hearing. It explained:

> [w]e do not construe the procedures adopted by the defendants in causing a lien to be impressed upon abutting properties to be so fundamentally unfair as to constitute a denial of due process. We do not think that the failure to provide a hearing *prior* to the imposition of the lien violates the due process tenets of the Constitution.

*Sager*, 350 F.Supp. at 1313 (emphasis added). By providing a property owner the opportunity to file a notice to issue a writ of scire facias and to raise any defenses to the claim in an affidavit of defense, the MCTLA affords owners an adequate post-deprivation remedy. *Id.; see also Winpenny v. Krotow*, 574 F.2d 176 (3d Cir. 1978) (not requiring a pre-lien hearing when plaintiff deliberately failed to pay her utility bill as a protest against the utility for poor service).

■ A post-lien hearing pursuant to the scire facias process provides an owner with a sufficient opportunity to be heard at a reasonable time in a reasonable manner. *Winpenny*, 574 F.2d at 176; *see also Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (noting that the fundamental due process requirement "is the opportunity to be heard 'at a meaningful time and in a meaningful manner'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). This understanding is consistent with the "usual rule" that "where only property rights are involved, mere postponement of the judicial [inquiry] is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate." *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 611, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) (quotations omitted).

■ Further, constitutional due process is not violated when a municipality holds a property owner liable for debts incurred by tenants for failing to pay utility services. *See Skupien v. Borough of Gallitzin*, 134 Pa.Cmwlth. 115, 578 A.2d 577 (1990); *see also Sledge v. Borough of Homestead*, 677 A.2d 1327 (Pa.Cmwlth. 1996) (municipality may place lien on landlord's property for tenants' failure to pay water and sewage bills). In *Skupien*, when a landlord challenged his liability for his tenants' municipal debts, we upheld his liability noting it did not unreasonably burden him. We reasoned that a property owner may enter into leases with rents that reflect the anticipated cost of utility services, and thus protect his interests.

That Perfetti did not know of the underlying municipal debt because it resulted from his tenants' non-payment does not entitle him to a pre-lien hearing. Decisional law is clear that an owner is liable for services that benefit his property, regardless of their incurrence by tenants. *Id.* Perfetti's circumstances are not so unique as to compel divergence from the statutory process this Court repeatedly holds comports with constitutional due process. *Shapiro; U. Gwynedd Twp. Auth.* Based on our precedent, we reject Perfetti's argument that the circumstances warrant an opportunity to be heard prior to filing a lien.

### 2. Pre-lien Notice

■ Perfetti argues that because he did not incur the municipal debt, and was un-

aware of it, the filing of the Liens without prior notice offends due process.[7] He asserts the issue of whether notice of the debt incurred is required prior to placing a lien on property was not decided in *Sager*, as the property owners received notice of the claim. Therefore, this Court should not rely on the cases that cite it for that proposition. He emphasizes the facts here are distinguishable in that he received no notice of the underlying debt.[8]

The City responds that no process is due outside the MCTLA because a municipal lien is an *in rem* judgment where a property owner is not personally liable or deprived of possession or control of his property. Pennsylvania law authorizes the filing of a municipal lien on real property even if a tenant is the utility customer that fails to pay the utility debt, without contemplating special notice to the landlord. *Skupien.* The lien is filed on the property benefited.

The City cites our decision in *Upper Gwynedd Township Authority* for the proposition that the lack of pre-lien notice to property owners under the MCTLA does not offend due process. In that case, the owner challenged municipal liens placed on her properties nine years after she failed to pay an assessment levied for the improvement of sewer lines benefiting her property. *Id.* at 876–77. Based on *Sager*, this Court rejected the owner's argument that the imposition of the liens deprived her of due process. *U. Gwynedd Twp. Auth.*, 536 A.2d at 878.

However, we note that *Sager* and *Upper Gwynedd Township Authority* are materi-

ally distinguishable from the current appeal in that the owners were aware of the municipalities' intent to place a lien on the property and of the underlying municipal claim. Thus, the holdings of those cases are of limited utility in resolving the pre-lien notice question here.

Whether a municipality must provide pre-lien notice to an owner who did not incur the municipal debt, and whether the inability to recover the debt from the tenant is a valid defense present matters of first impression. Thus, we employ the methodology of the U.S. Supreme Court in *Mathews* to assess whether the state action offends the Fourteenth Amendment's due process guarantees. *See Pa. Game Comm'n v. Marich*, 542 Pa. 226, 666 A.2d 253 (1995).

■ Under *Mathews*, a court must consider (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation through the procedures used; and, (3) the government interest affected by any additional or substitute procedural requirement. *Id.* at 335, 96 S.Ct. 893.

As to the private interests involved here, the placing of a lien on real property, which secures payment of a debt incurred at the property, is not as burdensome as a seizure or judicial sale of the property. Nevertheless, we recognize a lien encumbers property and impairs an owner's ability to mortgage or alienate it. *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). Under Section 3(a)(1) of the MCTLA, a municipal

---

**7.** According to the City, the utility is barred from alerting the property owner to liability incurred by his tenant. Reproduced Record (R.R.) at 41. An owner may bypass this bar by including a waiver of lessee's privacy rights in the lease or by putting the utility bill in property owner's name. R.R. at 42.

**8.** It is not clear whether the plaintiff in *Upper Gwynedd Township Authority v. Roth*, 113 Pa. Cmwlth. 239, 536 A.2d 875 (1988), received notice of the assessment/debt prior to the lien being placed on her property as the issue was not raised.

lien has priority over all other creditors, including any mortgagee. 53 P.S. § 7106(a)(1) (providing "municipal liens . . . shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, estate . . ."). In addition, once a lien is perfected, the owner must satisfy the debt. *Skupien.*

Second, we evaluate the risk of erroneous deprivation as opposed to the value of additional safeguards. Here, the risk of erroneous deprivation is low. In *Mitchell,* the U.S. Supreme Court noted that placing liens on property based on failure to pay a debt are "ordinarily uncomplicated matters that lend themselves to documentary proof." *Id.* at 609–10, 94 S.Ct. 1895. When the issue turns on the existence of a debt, the Supreme Court allows liens on the basis of "sworn *ex parte* documents, followed by early opportunity to put the creditor to his proof." *Id.*

The existence of a third party, such as a tenant, may complicate the matter. Nevertheless, the existence of a third party is in the control of the property owner, and the owner is in the best position to protect his or her interests. As the trial court noted, a property owner may include a waiver of the lessee's privacy rights in the lease or place the utility bill in the property owner's name. In contrast, the municipal service provider has no control over the presence, and little control over the performance, of a third-party lessee.

Finally, we assess "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335, 96 S.Ct. 893. Clearly, the government has an interest in making its financial position as predictable as possible and in securing debt owed for municipal services. Municipal liens are an efficient means by which municipalities secure payment for services rendered to property. The district court in *Sager* stated the issue well when it reasoned, with regard to municipal assessments:

> If challenges to assessments could be routinely and sporadically made by every effected person it would obviously erode the underpinning of every municipal budget and financial program. . . . The heart of municipal finance is the municipality's ability to have resources fixed and pledged in advance so that the potential public investor can recognize that the security he is about to buy is a stable one.

*Sager,* 350 F.Supp. at 1314.

Additional measures could significantly increase the government's burden. In addition to the financial and administrative burdens of the notice itself, providing notice to a record owner of property prior to placing a lien on property could require the municipality to search land records to confirm ownership. Such a requirement could also subject the municipal service provider to the vagaries of delayed recordings, complicated or ambiguous ownership arrangements, and other uncertainties.

The trial court correctly held that due process was not violated, in part, because "Perfetti could have avoided this predicament through any number of simple and straightforward methods." Tr. Ct., Slip Op. at 5. Such methods include incorporating the cost of utility services into rental rates, mandating that tenants sign a privacy waiver, or requiring tenants to prove utility payments are made. *Id.* at 6.

Moreover, the U.S. Supreme Court's decision in *Doehr,* upon which Perfetti heavily relies, does not compel a different result. *Doehr* considered whether an *ex parte pre-judgment* attachment of real es-

tate without prior notice violated a property owner's constitutional rights. In holding this type of attachment procedure was unconstitutional, the Court held that, "[u]nlike determining the existence of a debt or delinquent payments," determining whether an *attachment* of property is warranted "does not concern ordinarily uncomplicated matters that lend themselves to documentary proof." *Doehr*, 501 U.S. at 14, 111 S.Ct. 2105 (internal quotations omitted). The Liens at issue here, however, involve securing a debt, which lends itself to documentary proof, as opposed to the manner in which the debt is actually collected.

This Court distinguishes between liens, which are security-type interests, and attachments, which are collection procedures. *See N. Coventry Twp. v. Tripodi*, 64 A.3d 1128 (Pa.Cmwlth.2013). Pennsylvania precedent is clear that liens do not deprive an owner of use or possession of his property. *Borough of Ambler v. Regenbogen*, 713 A.2d 145 (Pa.Cmwlth.1998). In comparison, we recognize "the main function of an attachment is to take goods from a defendant's possession or control and place them in the custody of the law so that the goods may be seized on execution, if necessary." *Id.* at 148 (citing 17 Stand. Pa. Practice 2d § 94:2 (1997)). "Unlike an attachment, a lien is merely a charge, claim or encumbrance on the property placed to secure payment of a debt or other obligation." *Id.* A lien on a property does not alter possession or control over property. The owner may remove a municipal lien by paying the claim. *Shapiro*. Therefore, imposing a municipal lien does not sufficiently deprive an owner of the property to require prior notice procedures.

In sum, the Liens do not impair Perfetti's use or control over the Property. Applying *Mathews*, the government interest

in securing payment for services rendered at the Property is significant when balanced against any burden on the Property. Further, the risk of erroneous deprivation of Perfetti's property interest is low. Importantly, Perfetti is in a vastly superior position to control the presence and performance of third-party tenants at the Property. Therefore, Perfetti was not deprived of process constitutionally due under these circumstances.

### C. Right to Recovery

Lastly, we address Perfetti's fairness argument. He contends notice is required within a reasonable time to allow recovery from the parties who actually incurred the municipal debt. Perfetti challenges the post-lien notice under the MCTLA as meaningless when the statute permits a municipality virtually unlimited discretion as to when to file a lien. 53 P.S. § 7432. In so doing, he essentially raises an equitable argument, seeking to impose the balancing of prejudices on the statutory scheme. The MCTLA does not contemplate such a process.

"Municipal claims are creatures of statute; and any right to enforce collection is also statutory." *Trigona v. Lender*, 926 A.2d 1226, 1235 (Pa.Cmwlth.2007) (citing *City of Scranton v. Genet*, 232 Pa. 272, 81 A. 335 (1911)). As a statutory remedy, the MCTLA does not allow for equitable defenses such as laches or prejudice by delay. *S. Union Twp. Sewage Auth. v. Kozares*, 320 A.2d 381 (Pa.Cmwlth.1974).

In support of his alleged constitutional right to sue to recover for the amount of the judgment, Perfetti cites *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). However, *Logan* is inapposite to this case because the nature of the protected property interest materially differs.

More specifically, *Logan* involved an employee's right to redress under a state-

sponsored adjudicatory process. In *Logan*, the U.S. Supreme Court found the employee had a constitutionally protected property interest in his right to state a claim to the Fair Employment Practices Commission. The Court reasoned the employee had "more than an abstract desire or interest in redressing his grievance: his right to redress is *guaranteed by the [s]tate*, with the adequacy of his claim assessed under what is, in essence, a 'for cause' standard, based upon the substantiality of the evidence." *Id.* at 431, 102 S.Ct. 1148 (emphasis added).

Here, by contrast, Perfetti does not have a state-guaranteed means of redress of which he is being allegedly deprived. That the statute of limitations ran on his contractual claims against the tenants may not deprive him of his ability to recover the amount of the judgments. At this stage, Perfetti was not deprived of a right to sue, and his claims remain abstract.

### III. Conclusion

The post-lien procedure set forth in the MCTLA comports with constitutional due process. As owner of the Property, Perfetti had the responsibility to make arrangements with his tenants to ensure payment of the gas bills or require proof of payment. That he failed to do so, and so lacked notice of the unpaid bills, did not render the statutory process constitutionally inadequate.

For the foregoing reasons, we affirm the trial court's orders granting the City's motions for judgment on the Liens.

### ORDER

**AND NOW,** this 8th day of June, 2015, the orders of the Philadelphia County Court of Common Pleas are **AFFIRMED.**