# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Bellevue,            :
             Appellant      :
                              :
       v.                    :    No. 51 C.D. 2017
                              :    Submitted: October 6, 2017
Lois J. Mortimer and         :
Thomas J. Mortimer        :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**               **FILED: June 7, 2018**


Borough of Bellevue (Borough) appeals from an order of the Court of Common Pleas of Allegheny County (trial court), dated December 9, 2016, striking certain real estate tax claims filed by the Borough for the tax years 1997 through 2004 and reducing the amount of attorney fees recoverable by the Borough in connection with a real estate tax claim for tax year 2014. We now vacate and remand for reconsideration and a new opinion and order.

Appellee Lois J. Mortimer (Ms. Mortimer) is the record owner of real property known as 443 Union Avenue, Pittsburgh, Pennsylvania (the Property). On September 10, 2013, the Borough filed a Writ of *Scire Facias Sur* Tax Claim and Statement (Writ of *Scire Facias*) against the Property to reduce to judgment the Borough's real estate tax claims filed against the Property for tax years 1997 through 2004. On December 12, 2013, Ms. Mortimer filed an Affidavit

of Defense, alleging that such delinquent real estate taxes had been paid in full. On September 28, 2015, the Borough filed a Petition for Rule to Show Cause Why Judgment Should Not Be Entered for Want of Sufficient Affidavit of Defense (Rule). On that same day, Appellee Thomas J. Mortimer (Mr. Mortimer), Ms. Mortimer's son who resides at the Property and claims to have an ownership interest in it, sought to intervene in the matter. The trial court granted Mr. Mortimer's Petition to Intervene and scheduled argument on the Rule. The Borough then filed, on September 29, 2015, an Amended Writ of *Scire Facias Sur* Tax Claim and Statement (Amended Writ of *Scire Facias*) against the Property, adding real estate tax claims for the year 2014, for which the Borough asserted a tax claim after the filing of its original Writ of *Scire Facias*. Mr. Mortimer filed an Affidavit of Defense on February 23, 2016, alleging that all delinquent real estate taxes had been paid in full. The trial court conducted a hearing on May 23, 2016.

At the hearing, Ms. Mortimer's counsel, Mark Gesk, introduced two documents into the record relating to an earlier collection action for unpaid real estate taxes relating to the Property. Attorney Gesk introduced a Municipal Claim Letter from the Borough to the Sheriff of Allegheny County, received by the Sheriff's Office on April 28, 2003, requesting the Sheriff to enter the Borough's claim for "liened" Borough real estate taxes for the Property for the tax years 1996 through 2002, which included penalties, interest, and lien and satisfactions costs, in the total amount of $3,503.30, relating to a sheriff's sale scheduled to occur on May 5, 2003.[1] (Reproduced Record (R.R.) at R148a.) The municipal claim letter identified the defendants as Evon J. Mortimer and Lois J. Mortimer and set forth the

---

[1] The amount of the Borough's unpaid real estate taxes for each of the tax years at issue in this matter ranged from $398.80 to $546.81 and totaled $2,946.32. (Reproduced Record (R.R.) at R148a.)

docket number G.D. No. 02-14608. Attorney Gesk also introduced a praecipe to satisfy judgment (the GLS Praecipe), filed at the same docket number, which identified the plaintiff as GLS Capital, Inc., Assignee of the County of Allegheny (GLS Capital), and identified the defendants as Evon J. Mortimer and Lois J. Mortimer, husband and wife. Counsel for GLS Capital filed the GLS Praecipe, possibly on December 10, 2003, although the year of the date-stamp is difficult to read. The GLS Praecipe requested the Prothonotary to "mark the Docket in the above captioned action SATISFIED." (*Id.*)

Attorney Gesk stated that the sheriff's sale did not occur because the taxes were paid. (R.R. at R88a.) With regard to the GLS Praecipe, the Borough's counsel, Emily Mueller, contended that GLS, as Allegheny County's assignee, filed the praecipe to satisfy Allegheny County tax liens—not Borough tax liens. (*Id.*) Attorney Mueller took the position that she would like to review the complaint in that earlier action to ascertain whether it included the Borough's tax liens, because an assignee of county tax liens cannot initiate an action for municipal tax liens. (R.R. at R89a.) Moreover, Attorney Mueller took the position that GLS could only satisfy what Allegheny County assigned to it—that being Allegheny County tax liens, not Borough tax liens. (*Id.*) Attorney Mueller explained:

> And if there was no sheriff sale, if the sale ultimately did not occur, other taxing bodies' debts would not have been collected.
>
> If they were paid they would only have been paid what was assigned to them, which would have been county tax liens at the sheriff sale for one taxing body.
>
> Typically when a property is exposed you try to collect taxes and municipal claims that are due to everyone. But [Attorney] Gesk said this was not ultimately exposed to sale because the taxes at issue were paid. That's a county action. So only county taxes would have been paid.

3

(R.R. at R90a-R91a.)

In response, the trial court examined the docket entries available to it electronically. (R.R. at R92a-R98a.) The trial court noted that the docket identified GLS as the plaintiff in the action, although the docket also identified Michael Gorgalis as solicitor for the Borough in the matter. (R.R. at R93a.) The trial court, however, was not able to view the electronic images of documents filed in the matter.

Jerry Pasquinelli, Treasurer of Jordan Tax Service, testified on behalf of the Borough. (R.R. at R98a-R99a.) Jordan Tax Service serves as the delinquent real estate tax collector on behalf of the Borough. (R.R. at R99a.) Mr. Pasquinelli testified that the current tax collector provided Jordan Tax Service with a list of delinquent taxes for the Property for the years 1996 through 2004, and 2014 and 2015. (*Id.*) The Borough records indicated that the Borough had not received any payments for any of those tax years. (*Id.*) Jordan Tax Service did receive some monthly payments from Ms. Mortimer from October 2010 through July 2013, but the payments were not continuous. (R.R. at R100a-01a.) Jordan Tax Service applied those payments, in the amounts of roughly $50 per month, to tax years 1996 and 1997, resulting in tax year 1996 being paid in full and tax year 1997 being paid in part. (*Id.*) The taxes remain delinquent for the remainder of 1997 through 2004, and 2014 and 2015. (R.R. at R101a.)

According to Mr. Pasquinelli, Jordan Tax Service performs delinquent real estate tax service for Allegheny County as well. (*Id.*) Mr. Pasquinelli testified that Allegheny County turned the 2003 and 2004 taxes over as delinquent, and those taxes were paid in full in April of 2005. (*Id.*) Allegheny County did not turn the other tax years over as delinquent. (*Id.*) Attorney Mueller, during her direct examination of Mr. Pasquinelli, introduced into evidence a copy of the delinquent

4

tax docket, showing all the liens that Allegheny County, the school district, and the Borough entered against the Property. (R.R. at R102a.) She explained that both Allegheny County and the school district initiated lawsuits and that the delinquent taxes for both Allegheny County and the school district have been marked satisfied, as indicated on the delinquent tax docket. (*Id.*) Attorney Mueller further explained that the delinquent tax docket indicates that the school district filed an arbitration action and Allegheny County filed two writ of *scire facias* actions relating to unpaid taxes for the Property for tax years 2002 and 2003. (R.R. at R103a.) Some taxes were paid and the liens marked satisfied in 2005. (*Id.*) She explained that, during the relevant time period, taxes were not paid to any taxing body—the Borough, Allegheny County, or the school district, and taxes were paid to Allegheny County and the school district (not the Borough) only after Allegheny County and the school district (not the Borough) filed the lawsuits. (R.R. at R103a-04a.)

Mr. Mortimer testified that he paid the taxes, working closely with his father. (R.R. at R104a.) Mr. Mortimer provided the trial court with a copy of the delinquent tax dockets for the Property since 1994, with handwritten notes on it, which he claimed showed that he had paid the delinquent taxes. (R.R. at R105a-07a.) Attorney Mueller countered that the taxes to which Mr. Mortimer referred were Allegheny County taxes. (R.R. at R107a.) When questioned further by the trial court judge, Mr. Mortimer testified that he has lived in the house for a quarter of a century and paid the taxes himself. (R.R. at R108a.) He maintained that the Borough received the taxes but failed to mark the liens satisfied. (*Id.*) Mr. Mortimer, Attorney Mueller, and the trial court judge engaged in a lengthy and repetitive discussion on the record regarding which taxes the parties believe were satisfied for the relevant time period. (R.R. at R108a-17a.) Mr. Mortimer

5

maintained throughout the hearing that the taxes were always paid, either by him or his now deceased father. (R.R. at R118a.) Attorney Mueller pointed out that tax liens were filed for all of the years listed because taxes were not paid, and Allegheny County marked its liens satisfied long after the taxes were due. (*Id.*) Moreover, she clarified that Mr. Mortimer was the person who added the handwritten notes that certain liens were satisfied. (R.R. at R119a-20a.)

Throughout the hearing, the trial court judge expressed consternation that the Borough had waited so long to take action, although legally not required to do so earlier, because it made matters of proof more difficult due to the passage of time. By memorandum order dated December 9, 2016, the trial court struck the Borough's tax claims for the tax years 1997 through 2004 and reduced the amount of attorney fees due the Borough for the 2014 tax year.

On appeal,[2] the Borough generally argues that the trial court erred or abused its discretion in striking the real estate tax claims. More specifically, the Borough argues that the trial court committed an error of law or abused its discretion when it struck the Borough's real estate tax claims filed for tax years 1997 through 2002 based on the GLS Praecipe, which Appellees offered into evidence without a witness and which relates solely to an action filed to collect delinquent taxes owed to another taxing body, Allegheny County. The Borough also argues that, with regard to the 2003 and 2004 Borough real estate tax claims, the trial court committed

---

[2] This Court's scope of review of a trial court's order on the sufficiency of an affidavit of defense filed in response to a writ of *scire facias sur* tax claim and statement is limited to a determination of whether the trial court abused its discretion or committed an error of law, or whether constitutional rights were violated. *See Valley Forge Sewer Auth. v. Hipwell*, 121 A.3d 1164, 1167 n.4 (Pa. Cmwlth. 2015). An abuse of discretion exists where the conclusion reached by the trial court overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will. *Neshaminy Constructors, Inc. v. Plymouth Twp.*, 572 A.2d 814, 816 n.1 (Pa. Cmwlth. 1990).

an error of law or abused its discretion when it struck those claims based solely on the testimony of Mr. Mortimer and ignored the Borough's *prima facie* documentary evidence and testimony. Finally, the Borough contends that the trial court committed an error of law or abused its discretion by reducing *sua sponte* the amount of attorney fees due the Borough for the delinquent real estate tax claim for tax year 2014.

As background, the act commonly referred to as the Municipal Claims and Tax Liens Act (MCTLA)[3] provides a specific method of challenging the entry of a municipal claim, including municipal liens based upon unpaid real estate taxes. Under the MCTLA, the assessment and imposition of a lien occurs without any hearing, and a property owner may challenge the municipal lien after the lien is recorded. *City of Phila. v. Perfetti*, 119 A.3d 396, 399 (Pa. Cmwlth. 2015), *appeal denied*, 131 A.3d 493 (Pa. 2016). The MCTLA provides no mechanism for a direct appeal from the entry of a municipal claim or lien. Instead, a party challenging a municipal claim or lien must do so through a *scire facias* proceeding and cannot seek to strike the municipal claim or lien on appeal. Section 16 of the MCTLA, 53 P.S. § 7184; *N. Coventry Twp. v. Tripodi*, 64 A.3d 1128, 1133 (Pa. Cmwlth. 2013). In *Western Clinton County Municipal Authority v. Estate of Rosamilia*, 826 A.2d 52 (Pa. Cmwlth. 2003), this Court explained the procedure governing municipal claims and *scire facias* procedure in Pennsylvania, as follows:

> Once the municipality files a claim . . . , the claim becomes a lien on the property. If the owner does not dispute the claim and assessment, the owner simply pays and removes the lien. To contest the claim or amount of assessment and to force the issue to an original hearing, the owner may file and serve a notice upon the claimant municipality to issue

---

[3] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505.

7

a writ of *scire facias*. In the proceeding commenced by the writ of *scire facias*, the owner then files an "affidavit of defense." In that affidavit the owner may raise all defenses he or she has to the municipal claim.

Alternatively, the municipality may pursue a writ of *scire facias* without waiting for prompting by the owner . . . . In response to the writ, the owner may file an affidavit of defense raising all defenses.[4]

. . . .

Where a judgment for insufficient affidavit of defense is sought, the averments in the affidavit of defense are taken as true. The court may not go outside the case as presented by the pleadings for the purpose of considering extraneous facts, either in support of or against the line of defense disclosed by the affidavit. In this regard, the procedure followed is analogous to a motion for judgment on the pleadings. A rule for judgment for insufficient affidavit of defense may be discharged where the appellate court thinks it advisable that the case go to trial so that the facts may be more fully developed and passed upon.

*Estate of Rosamilia*, 826 A.2d at 56-57 (citations omitted). Furthermore, Section 20 of the MCTLA, 53 P.S. § 7187, provides, in part:

Tax claims and municipal claims shall be prima facie evidence of the facts averred therein in all cases; and the averments in both tax and municipal claims shall be conclusive evidence of the facts averred therein, except in the particulars in which those averments shall be *specifically* denied by the affidavit of defense, or amendment thereof duly allowed.

(Emphasis added.)

The Borough generally argues that the trial court erred or abused its discretion in striking the Borough's real estate tax claims when the Borough

---

[4] "[T]he owner and the municipality [also] may choose not to do anything, thereby letting the municipal lien remain recorded indefinitely subject to its revival . . . every twenty years upon issuance of a suggestion of nonpayment and an averment of default." *Tripodi*, 64 A.3d at 1133.

presented *prima facie* evidence of the claims and Appellees failed to present *specific* evidence of payment of the taxes. The Borough notes that Appellees provided no specific information as to when the taxes were paid, how the taxes were paid, or the amount of any payments. Although Appellees introduced the GLS Praecipe as evidence of payment of some of the taxes, the Borough disputes that the GLS Praecipe evidences payment of any of the Borough's taxes. The Borough also observes that Appellees did not provide any receipts or cancelled checks that would support proof of payment of taxes.

With regard to the real estate tax claims for the specific tax years 1997 through 2002, the Borough argues that the trial court committed an error of law or abused its discretion in striking the claims when it relied upon the GLS Praecipe as evidence of payment of the taxes and that the Borough should have caused the claims to be marked satisfied. The Borough notes that Appellees introduced the GLS Praecipe into the record without the testimony of a witness. Moreover, Attorney Mueller objected to its admission on the basis that the GLS Praecipe was filed by GLS as the assignee of Allegheny County (not the Borough) and, therefore, did not satisfy the Borough's tax claims. Since the conclusion of the hearing, Appellees concede that the GLS Praecipe and Municipal Claim Letter do not evidence satisfaction of the real estate tax claims, and Appellees withdraw that contention. (Appellees' Br. at 2-3 n.2.) Thus, we must consider whether, in the absence of the GLS Praecipe and Municipal Claim Letter, substantial evidence exists to support a finding that Mr. Mortimer or his father paid the Property's real estate taxes for the tax years 1997 through 2002, as well as 2003, 2004, and 2014.

We agree that the Borough's introduction of the delinquent tax docket setting forth the delinquent tax claims for the years 1997 through 2004 and 2014

9

constituted *prima facie* evidence that the taxes are owing to the Borough. *See* Section 20 of the MCTLA, *as amended*, 53 P.S. § 7187 ("Tax claims and municipal claims shall be *prima facie* evidence of the facts averred therein in all cases[.]"). The burden then shifted to Appellees to establish that the taxes had been paid.

As noted above, the Borough also contends that Appellees failed to introduce specific evidence proving payment of the taxes, and, therefore, the trial court erred in striking the taxes. In advancing this argument, the Borough relies upon Section 20 of the MCTLA, which provides, in part: "[T]he averments in both tax and municipal claims shall be conclusive evidence of the facts averred therein, except in the particulars in which those averments shall be *specifically denied* by the affidavit of defense, or amendment thereof duly allowed[.]" (Emphasis added.) The Borough also cites to the Superior Court's decision in *General Municipal Authority of Borough of Harvey's Lake v. Yuhas*, 572 A.2d 1291 (Pa. Super.) (*Yuhas*), *appeal denied*, 593 A.2d 419 (Pa. 1990), for the proposition that the allegations in the affidavit of defense must be certain and definite.[5] The Borough then argues that, in the absence of detailed and specific proof of payment, the trial court erred in finding that Mr. Mortimer or his father paid the taxes for the years 1997 through 2004.

In *Yuhas*, a general municipal authority filed a writ of *scire facias* with respect to three municipal sewer lines relating to several parcels of real estate. The owners of the parcels filed a motion to strike writ of *scire facias*, which the trial court treated as an affidavit of defense. In the "affidavit," the owners of the parcels disputed the amount of the sewer charges owed to the general municipal authority and the manner in which payment was to be made, but none of the documents filed

---

[5] Although decisions of the Superior Court are not binding on this Court, they may serve as persuasive authority. *Wertz v. Chapman Twp.*, 709 A.2d 428, 433 n.8 (Pa. Cmwlth. 1998), *aff'd*, 741 A.2d 1272 (Pa. 1999).

by the owners of the parcels indicated how the specific charges were inaccurate. The general municipal authority filed a motion for entry of judgment for want of an affidavit of defense, which the trial court granted. In so doing, the trial court found that the affidavit "was indefinite, equivocal, vague, and evasive and contained unsupported conclusions and opinions." *Yuhas*, 572 A.2d at 1293. The trial court concluded that the "documents [did] not satisfy the requirement that the affidavit be 'certain and definite.'" *Id.* at 1294 (quoting *Borough of Fairview v. Prop. Located at Tax Index No. 48-67-4*, 453 A.2d 728, 730 n.3 (Pa. Cmwlth. 1982)).

In *Borough of Fairview*, this Court considered a challenge to an assessment for improvements. Noting that a property must be benefitted in order to sustain an assessment for improvements and that benefit to an abutting property is presumed when there has been improvement to a street, the Court considered whether the owner of the property rebutted the presumption. We concluded that the record showed no pleadings of facts to rebut the presumption of benefit, only bald assertions that the street improvement did not benefit the property and that the borough lacked authority to make the assessment. This Court then affirmed the trial court's order overruling the affidavit of defense. *Borough of Fairview*, 453 A.2d at 730.

Both *Yuhas* and *Borough of Fairview*, however, are distinguishable from the matter now before the Court, because those cases involved challenges to the affidavits of defense themselves. Here, the issue is not whether the *Affidavit of Defense* is sufficient to inform the Borough of the bases for Appellees' challenge to the Writ of *Scire Facias*.[6] Rather, at issue in this case is whether the *evidence*

---

[6] Moreover, in *Yuhas*, the owners of the parcels did not set forth the reason that they believed the amount to be incorrect. In *Borough of Fairview*, the property owners did not state

11

produced at the hearing was sufficient to overcome the *prima facie* evidence that the taxes are owing to the Borough. Thus, *Yuhas* and *Borough of Fairview* are not directly on point. Furthermore, nothing in Section 20 of the MCTLA restricts the type of evidence that a trial court may rely upon in reaching a determination.

As to the evidence presented to the trial court, Appellees argue that the trial court properly struck the tax claims, because (1) the Borough produced no witnesses with independent or direct knowledge relating to the disputed taxes at issue; (2) Appellees produced the testimony of Mr. Mortimer, who had direct knowledge of the facts and documents relating to all relevant periods prior to 2005; and (3) the Borough commenced this action nearly 20 years after the first alleged delinquency.

While it is true that the Borough's witnesses were not personally involved with the delinquent taxes for tax years 1997 through 2004, that circumstance does not establish payment of the taxes nor does it negate or diminish the fact that tax claims constitute *prima facie* evidence that taxes are owing. Mr. Mortimer essentially testified that either he or his father paid all the real estate taxes for the Property, but he did not have any records due to the passage of time. Mr. Mortimer's testimony, as a natural consequence of the passage of time and lack of documents, lacked specificity. His testimony, however, also contained inconsistencies or conflicted with documents of record. He testified inconsistently as to whether he or his father paid the taxes. He also testified that he and his father always worked together and paid all of the taxes, regardless of the identity of the

---

any facts in support of their legal conclusion that the street improvements did not benefit the property. Here, Appellees contend that they do not owe the taxes because Mr. Mortimer or his father paid the taxes. Unlike *Yuhas* and *Borough of Fairview*, such an assertion is sufficiently specific to meet the requirements of Section 20 of the MCTLA.

taxing body, although the delinquent tax docket appears to contradict that they always paid the taxes owed to Allegheny County and the school district. Instead, the delinquent tax docket shows that they repeatedly failed to pay the Allegheny County and school district taxes in a timely manner and that those taxes (for many of the years) were paid only after the taxing body initiated litigation against the Property. Furthermore, he did not appear to have any first-hand or personal knowledge about the details surrounding the litigation involving Allegheny County or the school district.

In finding Mr. Mortimer's testimony credible that he or his father paid the taxes for the years 1997 through 2004, the trial court relied, in part, on its mistaken belief that the GLS Praecipe evidenced satisfaction of those taxes for the years 1997 through 2002, which the parties now agree it did not.[7] Because the trial court based its findings on a document which did not establish satisfaction, contrary to the trial court's understanding, we must vacate the trial court's opinion and order and remand the matter to the trial court for the issuance of a new opinion and order without consideration of the GLS Praecipe as evidence of satisfaction of the Borough taxes for the years 1997 through 2002.

Finally, with regard to the attorney fees relating to the 2014 real estate taxes, the Borough argues that the trial court erred or abused its discretion when it *sua sponte* reduced the amount of the attorney fees that the Borough may collect in connection with those taxes. The Borough included $2,610 in attorney fees in the 2014 delinquent claim (as of the date of argument) and notes that at no time during the proceedings or in the Affidavit of Defense did Appellees challenge the amount

---

[7] The trial court wrote: "I accept the documents presented and find that the Borough Taxes for the period 1996 through 2002 were satisfied and that they are no longer owed and are struck from the claim here being made." (Trial court op. at 2.)

of the attorney fees. Thus, the Borough contends that the trial court erred in reducing the amount by $2,110, thereby allowing the Borough to recover just $500 for attorney fees. The reason for the trial court's reduction is unclear, as the trial court wrote:

> I have found that only the 2014 taxes are still due. The face amount is $373.60. The penalty on that amount is $37.36; interest $24.91; lien cost is $25.00; and $46.09 service expense for a preliminary total for 2014 to be $506.96. I will assess, an attorney's fee of $500 and therefore award $1,006.96 to the Borough against Mortimer. In addition, record costs paid to file the Complaint are awarded.

(Trial court op. at 4.) Moreover, the trial court took no evidence regarding the attorney fees nor did it indicate to the parties during the hearing that it may reduce the attorney fees demand.

Section 3 of the MCTLA provides that tax claims and tax liens, along with attorney fees, are a lien on the Property and sets forth a procedure for imposing and assessing attorney fees and for challenging the amount of the attorney fees. Pursuant to Section 3(a)(1) of the MCTLA, 53 P.S. § 7106(a)(1), reasonable attorney fees incurred in the collection of delinquent real estate taxes are made part of the lien filed against the property for such delinquent taxes. Section 3(a.1) of the MCTLA, 53 P.S. § 7106(a.1), addresses the collection of reasonable attorney fees and provides:

> It is not the intent of this section to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions. Attorney fees incurred in the collection of any delinquent account, including municipal claims, municipal liens, taxes, tax claims and tax liens, shall be in an amount sufficient to compensate attorneys undertaking collection and representation of a municipality or its assignee in any actions in law or equity involving claims

14

arising under this act. A municipality by ordinance, or by resolution if the municipality is of a class which does not have the power to enact an ordinance, shall adopt the schedule of attorney fees. *Where attorney fees are sought to be collected* in connection with the collection of a delinquent account, including municipal claims, municipal liens, taxes, tax claims and tax liens, *the owner may petition the court of common pleas in the county where the property subject to the municipal claim and lien, tax claim and lien or taxes is located to adjudicate the reasonableness of the attorney fees imposed.* In the event that there is a challenge to the reasonableness of the attorney fees imposed in accordance with this section, the court shall consider, but not be limited to, the following:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to properly undertake collection and representation of a municipality.

(2) The customary charges of the members of the bar for similar services.

(3) The amount of the delinquent account collected and the benefit to the municipality from the services.

(4) The contingency or the certainty of the compensation.

(Emphasis added.)

Here, rather than recognizing that the attorney fees are part of the lien on the Property and challengeable through the filing of a petition, it appears that the trial court believed that it had the power to *sua sponte* assess an amount of attorney fees to be paid in connection with the unpaid taxes. Such *sua sponte* action, however, ignores the statutory framework set forth in Section 3 of the MCTLA for challenging the amount of attorney fees included in a lien. Thus, the trial court committed an error of law when it *sua sponte* reduced the amount of attorney fees payable to the Borough in the absence of a petition filed pursuant to Section 3 of the MCTLA. On remand, the trial court shall consider Section 3 of the MCTLA when addressing attorney fees.

15

Accordingly, we vacate the order of the trial court and remand the matter to the trial court for reconsideration and the issuance of a new opinion and order, consistent with this opinion.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Bellevue,                           :
                 Appellant        :
                                 :
         v.                                    :  No. 51 C.D. 2017
                                 :
Lois J. Mortimer and                           :
Thomas J. Mortimer                             :

## *O R D E R*

AND NOW, this 7th day of June, 2018, the order of the Court of Common Pleas of Allegheny County (trial court) is VACATED, and the matter is remanded to the trial court for reconsideration and the issuance of a new opinion and order, consistent with the opinion of this Court.

Jurisdiction relinquished.

 

 

_____
P. KEVIN BROBSON, Judge