1999 PA Super 37

**TURNEY MEDIA FUEL, INC. Appellee,**

v.

**TOLL BROS., INC., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 16, 1998.
Filed Feb. 22, 1999.

Mark S. Haltzman, Bala Cynwyd, for appellant.

Frank Schwartz, Philadelphia, for appellee.

Before JOHNSON and MONTEMURO *, JJ. and CIRILLO, President Judge Emeritus.

MONTEMURO, J.:

¶ 1 Appellant, Toll Brothers, Inc., appeals from the judgment[1] entered in the Court of Common Pleas of Delaware County stemming from a breach of contract action filed by Turney Media Fuel, Inc. For the reasons set forth below, we affirm.

¶ 2 This breach of contract action arises from a series of agreements between Toll Brothers, Inc. (Toll), a developer, and Turney Media Fuel (Turney), a heating, ventilation, and air conditioning (HVAC) subcontractor. Pursuant to the agreements, Turney installed HVAC systems into new homes at four Toll developments in Delaware County; the work spanned from early 1993 through late 1995. Turney invoiced Toll for the work performed at the various developments. However, when Toll refused to pay $42,475.00 of the invoiced sum, Turney filed the instant action claiming breach of contract. Toll counterclaimed, seeking damages in excess of $100,000 for breach of contract, claiming that Turney's HVAC installation was not done in a workmanlike and timely manner or serviced in accordance with its specified warranties; the counterclaim also alleged fraud and breach of implied warranties of merchantability and fitness for a particular purpose. Following a bench trial, the court entered a verdict in favor of Turney and against Toll for $25,738.00. Toll's post-trial motions were denied and this appeal timely appeal followed.[2]

¶ 3 On appeal, Toll presents six issues for our review, all of which request a new trial or entry of judgment in its favor based upon a challenge to the weight of the evidence and to the trial court's preclusion of expert testimony by Toll's witness Charles Shiber.[3] We will address first Toll's claim

* Retired Justice assigned to Superior Court.

1. Appellant filed a notice of appeal from the March 17, 1998 Amended Verdict and the May 18, 1998 Order denying its post-trial motions. We remind Appellant that verdicts in non-jury trials and orders denying post-trial motions are interlocutory and unappealable until the entry of final judgment. *Reuter v. Citizens & Northern Bank*, 410 Pa.Super. 199, 599 A.2d 673, 676 (1991); *State Farm v. Moore*, 375 Pa.Super. 470, 544 A.2d 1017, 1018 (1988), *appeal denied*, 521 Pa. 622, 557 A.2d 725 (1989). In the instant case, although the notice of appeal was filed prematurely, the docketing statement reveals that judgment was ultimately entered on July 10, 1998. Therefore, appellate jurisdiction has been perfected and we may proceed to examine the merits of Appellant's claims. *See* Pa.R.A.P. 905(a)("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); *Somerset Hosp. v. Mitchell & Assoc.*, 454 Pa.Super. 188, 685 A.2d 141, 144 n. 1 (1996)(holding appeal from order denying post-trial motions was proper since prothonotary entered judgment prior to appellate disposition).

2. An Amended Verdict awarding the same amount was entered following the court's review of Toll's post-trial submissions.

3. We are compelled to note that of the six substantive issues raised by Toll, three issues fail to cite any relevant, supportive caselaw, another issue consists entirely of a cursory, one paragraph argument, and a fifth issue is supported mostly by non-binding, non-persuasive federal caselaw. As such, we could find five of the six issues waived. *See* Pa.R.A.P. 2101, 2119(a); *Estate of Lakatosh*, 441 Pa.Super. 133, 656 A.2d 1378, 1381 (1995)(holding review of issues precluded since appellant provided merely general, unsupported statements in brief, and little or no citation to relevant caselaw). Nevertheless, in the interests of judicial economy, because most of Toll's waived issues attack the weight of the evidence, we will address these separate, cursory challenges as a collective weight of the evidence claim.

In a separate issue, Toll summarily argues that the Amended Verdict "should be recast to comply with the requirements of Rule 1038(b)" since it fails to distinguish upon "which of Toll's Counterclaims, if any, judgment was granted to Toll." (Appellant's Brief at 10). We find this issue meritless. Rule 1038(b) provides that although the decision of a judge may consist of general findings, it must dispose of all claims for relief. Pa.R.C.P. 1038(b). In the instant case, Turney sought damages in the amount of $42,475.00 for breach of contract. The trial court opinion makes clear that its verdict in favor of Turney

regarding the preclusion of testimony. Before trial, Turney filed a motion *in limine* seeking to preclude the expert testimony of Toll's witness, Charles Shiber, president of S & S Mechanical, based on discovery violations. Toll anticipated calling Shiber as both a fact witness and an expert witness to establish that Turney's HVAC installation was not done in a workmanlike manner and, therefore, violated specific provisions of its contract with Toll as well as industry-wide standards for HVAC installation. Turney did not challenge Shiber's testimony as a fact witness, however, it claimed that the expert testimony should be precluded since Toll violated discovery rule Pa.R.C.P. 4003.5(b) governing the identity of expert witnesses by not responding to Turney's expert witness interrogatories or disclosing an expert report until 13 days before trial.

¶ 4 The arguments contained in the briefs of both parties suggest that the trial court granted Turney's motion *in limine* based upon Toll's discovery violation. However, our review of the record reveals that the court, although noting its displeasure with Toll's infraction, ultimately precluded Shiber's expert testimony on the basis of relevancy. *See* N.T. 12/1/97 at 11–12.

¶ 5 The admission or exclusion of evidence, including the admission of testimony from an expert witness, is within the sound discretion of the trial court. *Montgomery v. South Philadelphia Med. Group, Inc.*, 441 Pa.Super. 146, 656 A.2d 1385, 1388, *appeal denied*, 542 Pa. 648, 666 A.2d 1057 (1995). Thus our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. *Gemini Equipment v. Pennsy Supply*, 407 Pa.Super. 404, 595 A.2d 1211, 1215 (1991). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also

harmful or prejudicial to the complaining party. *Johnson v. Hyundai Motor America*, 698 A.2d 631, 637 (Pa.Super.1997), *appeal denied*, 551 Pa. 704, 712 A.2d 286 (1998).

¶ 6 The basic requisite for the admission of any evidence is that it be both competent and relevant. *Peled v. Meridian Bank*, 710 A.2d 620, 625 (Pa.Super.1998). Evidence is "competent" if it is material to the issues to be determined at trial, and "relevant" if it tends to prove or disprove a material fact in issue. *Romeo v. Manuel*, 703 A.2d 530, 532 (Pa.Super.1997); *Sprague v. Walter*, 441 Pa.Super. 1, 656 A.2d 890, 918 (1995), *appeal denied*, 543 Pa. 695, 670 A.2d 142 (1996). The question of whether evidence is relevant and, therefore, admissible, is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion. *Sprague*, 656 A.2d at 907. It is the court's function to exclude any evidence which would divert attention from the primary issues in the case, *Egelkamp v. Egelkamp*, 362 Pa.Super. 269, 524 A.2d 501, 504 (1987), thus the trial judge has broad discretion regarding the admissibility of potentially misleading or confusing evidence. *Sprague*, 656 A.2d at 909.

¶ 7 Here, Toll sought to establish its counterclaim of breach of implied warranties of merchantability and fitness for a specific purpose through Shiber's expert testimony of the industry-wide practice regarding HVAC systems. After hearing argument on the motion *in limine*, the court decided to defer its ruling until it heard the individual questions asked of Shiber and invited counsel to make any objections at that time. (N.T. 12/1/97 at 12–13). Because Shiber was hired to correct HVAC problems at many of the Toll sites, he was qualified as a fact witness to testify to what he observed regarding Turney's HVAC installation and whether, in

reflects "the sum claimed less one invoice which had already been paid and less the sums paid S & S Mechanical for work done within the period ... of [Turney's] one year warranty." (Trial Ct. Op. at 4). This language makes clear that the court found for Turney on its breach of contract claim against Toll for all invoices due, with the exception of one instance in which Turney failed to correct an HVAC problem reported within its

one year warranty period and for those lots where S & S Mechanical completed work under the Turney warranty. Accordingly, the trial court reduced the verdict by the amount incurred by Toll in employing S & S Mechanical to remedy Turney's failure. All other counterclaims raised by Toll were rejected. Thus, the Amended Verdict sufficiently disposes of all claims for relief.

his opinion, it conformed to the contract specifications. In that respect, the court noted that among people in the trade, it is often difficult to distinguish between fact and expert testimony. (*Id.* at 13). However, the court underscored its reservations concerning the admission of expert testimony of any industry-wide standards, stating that "the essence of this case ... is more of a fact issue of whether or not ... the work called for in the contract was performed appropriately, whether bills were submitted and whether payment was made." (*Id.* at 14).

¶ 8 At trial, objections were raised to Shiber's testimony and the court refused to permit expert testimony as to industry-wide HVAC standards. The court stated that "from the evidence presented thus far, I understand this case to be a failure in workmanship as opposed to a warranty or implied warranty case [based upon] a failure of a piece of equipment.... If, however, the testimony changes in that regard, then my decision is subject to change." (N.T. 12/3/97 at 7–8). Thus, the court permitted Shiber to testify to "mixed fact and opinion" regarding whether Turney's HVAC installation was proper pursuant to its contract with Toll and why remedial work by S & S Mechanical was necessary; however, it refused to admit wide-ranging expert testimony addressing how, in Shiber's opinion, the system could have been installed "better" according to industry standards. (N.T. 12/1/97 at 215–16). We find no reason to disagree with this ruling.

¶ 9 The implied warranties claimed by Toll, i.e., merchantability and fitness for a particular purpose, arise by operation of law under the Uniform Commercial Code (UCC), 13 Pa.C.S.A. §§ 2314, 2315, and serve to protect buyers from loss where goods purchased are below commercial standards or unfit for the buyer's purpose. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 258 (Pa.Super.1997), *appeal denied,* 1998 Pa LEXIS 1508 (Pa. July 7, 1998). Article 2 of the UCC governs transactions involving products or "goods," thus before the protections of the warranties attach there must be a sale of goods. *Id.* at 2102. We note, however, that

[w]hen the transaction involves predominately the rendition of services, the fact that tangible, movable goods may be involved in the performance of a contract does not bring the contract under the code.

*Whitmer v. Bell Telephone Co. of Pa.*, 361 Pa.Super. 282, 522 A.2d 584, 587 (1987). *See also Stephenson v. Greenberg*, 421 Pa.Super. 1, 617 A.2d 364, 368 (1992), *appeal denied,* 535 Pa. 649, 633 A.2d 153 (1993).

¶ 10 The instant matter does not involve the sale of goods; rather, it involves the rendition of HVAC installation services. Toll's contract specified the size, model number and manufacturer of all HVAC units to be installed by Turney, thus the main objective of this contract was the installation, not sale, of pre-designated equipment or "goods." Further, Toll consistently asserted that it was not obligated to pay Turney under the contract due to Turney's negligent workmanship in installing the HVAC systems; there was no argument concerning the sale of commercially defective goods.

¶ 11 For instance, Toll presented evidence through the testimony of Shiber that Turney's faulty workmanship included misconnected or unconnected ductwork, return vents that were not cut out, ducts that were not properly sealed or insulated, and that the air flow was not properly balanced throughout house. At no time, however, did Toll present any evidence that the HVAC equipment itself was below the commercial standard or unfit for the homeowner's purpose; rather, the gravamen of Toll's counterclaim was that Turney was not due payment because of faulty *installation,* a service it was contracted to provide. We find no error in the trial court's preclusion of expert testimony concerning industry-wide HVAC standards as it relates to Toll's claim of a breach of implied warranties of merchantability and fitness for a particular purpose as such claims are inapplicable to the instant matter and the testimony is irrelevant. Thus, the court properly restricted Shiber's expert testimony to opinions regarding the installation of HVAC systems as related to Turney's

obligations under the Toll contract.[4]

¶ 12 Next, Toll claims that a new trial is warranted since the court's verdict was against the weight of the evidence. Our standard of review in this area is well settled. The decision whether to grant or deny a new trial is one that lies within the discretion of the trial court and will not be overturned unless the court grossly abused its discretion or committed an error of law which controlled the outcome of the case. *Comm. of PA, Dept. of Transp. v. Patton*, 546 Pa. 562, 567, 686 A.2d 1302, 1305 (1997). Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but, rather, after due consideration of the evidence found credible by the trial court, and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion. *Stahli v. Wittman*, 412 Pa.Super. 281, 603 A.2d 583, 584, *appeal denied*, 533 Pa. 601, 617 A.2d 1275 (1992). Thus, an appellant bears a heavy burden in persuading the court that such error occurred. *Childers v. Power Line Equipment Rentals*, 452 Pa.Super. 94, 681 A.2d 201, 206 (1996), *appeal denied*, 547 Pa. 735, 690 A.2d 236 (1997). Moreover, a new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. *Martin v. Evans*, 551 Pa. 496, 711 A.2d 458, 461 (1998);*Thomas v. E.B. Jermyn Lodge No. 2*, 693 A.2d 974, 980 (Pa.Super.1997).

¶ 13 The instant matter proceeded as a bench trial. It is well settled that in such cases, the trial court, as factfinder, is free to believe all, part or none of the evidence presented and, therefore, assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder. *Adamski v. Miller*, 545 Pa. 316, 319, 681 A.2d 171, 173 (1996). Further, we note that the findings of

the judge in a non-jury trial are given the same weight and effect as a jury verdict such that the court's findings will not be disturbed on appeal absent an abuse of discretion, error of law, or lack of support in the record. *Olmo v. Matos*, 439 Pa.Super. 1, 653 A.2d 1, 3 (1994), *appeal denied*, 541 Pa. 652, 664 A.2d 542 (1995).

¶ 14 The issue involved in this matter is whether the HVAC installation performed by Turney met the terms of the contract thereby giving rise to Toll's obligation to pay the invoiced sum for the services rendered. *See* N.T. 12/1/97 at 159. Toll hired Turney to install HVAC systems in several of its new construction residential developments. Pursuant to the installation contract, Turney was to provide from the date of settlement a one year warranty on all parts and labor of the HVAC system and a two year warranty on all refrigerant line leaks and duct work separations. Toll specified the type and size of the equipment to be installed as well as the placement of ductwork for each home. The contract further provided that Turney, as HVAC contractor, was ultimately responsible for the efficient operation of the HVAC system.

¶ 15 Shiber testified that S & S Mechanical was hired by Toll to perform remedial work on the HVAC systems installed by Turney. Specifically, Shiber stated that he observed, *inter alia*, improperly "piped" return systems; missing, damaged, unsealed and undersized ductwork; the absence of openings in the floors for vents; the lack of proper wiring for humidifiers; and imbalanced air flow such that one room was hot and another cold. However, on cross-examination Shiber admitted that although insufficient insulation and air leaks resulting from the construction and design of a home could seriously affect the efficiency of a HVAC system, S & S Mechanical never inspected the installation or insulation of the windows or doors in the homes with problems attributed to Turney's faulty HVAC installation.

4. Indeed, Turney did not object to Shiber's qualification as an expert regarding the installation of HVAC systems. (N.T. 12/1/97 at 154).

¶ 16 S & S employee, David Clayton, recounted specific HVAC problems at various homes and described what work was necessary to correct the problems. However, Clayton admitted that Turney's HVAC work was done in a workmanlike manner in that it was completed, connected, and facilitated air flow. (N.T. 12/5/97 at 35). He noted that several homeowners complained about the efficiency of the HVAC system and that the heat was uneven throughout the house, i.e., some rooms were unusually cold while others were satisfactory. Clayton explained that this problem was caused by low air flow and was corrected by S & S's installation of larger, 6 inch ducts. (*Id.* at 37). When challenged on cross-examination, however, he admitted that the smaller, 5 inch ducts used by Turney were "workmanlike" when installed. (*Id.* at 119).

¶ 17 Turney presented the testimony of its president, Joseph Descepola, who stated that all duct work was installed pursuant to the contract regarding its placement, size and sealing, and that Turney had no ability to deviate from the specifications set forth by Toll in the contract. Denying that any HVAC system was installed improperly, he noted that there were instances where other subcontractors had damaged or removed ductwork which Turney had to later repair. (N.T. 12/15/97 at 302). Descepola further testified that although there were complaints by homeowners within the warranty period, Turney never refused to do warranty work when asked, it always sent a service representative out to the home to address the problem, (*Id.* at 262–63), and Turney was never called to remedy any of the problems evidenced by S & S Mechanical's invoices. (*Id.* at 304).

¶ 18 Moreover, the evidence revealed that after Turney began its HVAC installation at Rose Tree Estates, it was invited by Toll project managers Robert Johnson and Steve Walker to work at other sites including Lake Ridge Estates, Valley Forge Woods, and Uwchlan Hunt. Robert Johnson, senior project manager at Lake Ridge Estates, stated that it was the responsibility of the project manager to check all subcontract work to make sure that it was done and to challenge the subcontractor with respect to the HVAC installation and duct sizing. (N.T. 12/5/97 at 158–161).[5] Toll paid its HVAC subcontractors on a phased payment system; therefore an inspection was completed at each stage of HVAC installation, e.g., rough ductwork, furnace installation, thermostat and register installation, before any payment was rendered by Toll. (*Id.* at 184). Johnson noted that although there are always complaints from homeowners, he was aware of "no major issues" or significant complaints with Turney's work, (*Id.* at 160), and stated that Turney complied with requests to return to the site for warranty repairs. (*Id.* at 182). Similarly, Alan Filiault, the assistant project manager at Valley Forge Woods, stated that with one exception, Turney addressed all complaints received within its warranty period. (N.T. 12/15/97 at 16).

¶ 19 After receiving all the evidence, the trial court entered a verdict in favor of Turney and against Toll in the amount of $25,738.00. This amount reflects a $16,737.00 set off awarded to Toll which includes the sum of one invoice which had already been paid and the amount paid to S & S Mechanical for remedial HVAC work it performed at the Toll sites within Turney's warranty period. Upon a thorough review of the record and applicable caselaw, including the testimony as recounted above, we find no reason to disagree with this verdict.

¶ 20 Order affirmed.

---

5. This testimony was consistent with that of Brian Webb, superintendent at Lake Ridge, who stated that the superintendent of each Toll site conducts a "framing inspection" of the home before the drywall is hung and writes down, room by room, any deficiencies found with the subcontracted work, e.g., pluming, HVAC, and electric; if a problem is found, the subcontractor is contacted so that it can be addressed before the drywall is completed. (N.T. 12/15/97 at 32).