J-A33008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CHRISTOPHER GUTTERIDGE AND APPLIED ENERGY PARTNERS, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| J3 ENERGY GROUP, INC., T/D/B/A J3 ENERGY GROUP AND STEPHEN RUSSIAL | |
| Appellants | No. 3397 EDA 2013 |

Appeal from the Judgment Entered November 25, 2013
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2009-09160-CA

BEFORE: LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

CONCURRING AND DISSENTING MEMORANDUM BY LAZARUS, J.:

**FILED NOVEMBER 17, 2015**

I agree with analysis and the result reached by the majority with respect to Appellants' Issues 2, 3 4 and 6. However, I disagree with the majority's conclusion that the trial court erred in determining that Russial and Gutteridge were the parties to the failed business deal. I also disagree with the majority's conclusion that the judgment must be reduced to account for commissions J3 paid to Porreca and Keaton.

The trial court heard Gutteridge's testimony that he was dealing with Russial personally. The court also heard Gutteridge's deposition testimony

---

[*] Retired Senior Judge assigned to the Superior Court.

in which he stated that he assumed he was dealing with Russial as president of J3.[1]  The court specifically notes in its Pa.R.A.P. 1925(b) opinion that "Gutteridge initially entered into the business relationship with . . . Russial." Trial Court Opinion, 6/11/14, at 4.  Clearly, the court believed Gutteridge's testimony that he was dealing with Russial personally.  The court states that it "finds credible the testimony of . . . Gutteridge when considered against that of . . . Russial." *Id.* at 1.

The court found further support for its conclusion of personal liability in the following exchange that took place during Gutteridge's cross-examination:

Q:    Would you admit that neither you nor your company AEP has a written contract with either J3 Energy Group, Inc. or Mr. Russial?

A:    Formal written contract, no.

Q:    In your dealings with J3 Energy Group, did J3 Energy Group make it clear several times to you that it wanted a written contract in order to continue a business relationship with AEP?

A:    Yes, and I made the same representations in reverse.

THE COURT:        Mr. Gutteridge, I thought I heard testimony earlier on direct examination that Mr. Russial said to you that there was no need to do this in written form, as long as the respective obligations of the parties were well defined?

A:    Yes, your Honor.

_____

[1] "As the factfinder, it was the judge's prerogative to believe part of a witness' testimony and find him mistaken as to the other part."  *Miller v. C.P. Centers, Inc.*, 483 A.2d 912, 915 (Pa. Super. 1984).

The Court: So at what point in time in the process did the idea of having a written document come into being? Because apparently early on there wasn't one, and it wasn't being pursued.

A: No. You're right. After, I guess, March or so of 2008, is when the issue came up of should we form a separate legal entity to run the Energy Buyers group. And [counsel for Appellants'] advice at the time was we didn't need that. But into the fall and the rest of the year 2009, the issue of how we should formalize the relationship came up a number of times over.

N.T. Trial, 6/13/12, at 10-11.

Based on this testimony, the court concluded that once the parties were unable to come to a written agreement with respect to the Group, it was "perfectly reasonable for . . . Gutteridge to believe that the formation of the sales and marketing relationship *between himself and . . . Russial* was ongoing and continued despite their inability to formalize the creation of the Energy Buyers Group." Trial Court Opinion, 6/11/14, at 4 (emphasis added).

"Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder." *Turney Media Fuel v. Toll Bros.*, 725 A.2d 836, 841 (Pa. Super. 1999). "The test is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." *Terletsky v. Prudential*

- 3 -

*Property and Cas. Ins. Co.*, 649 A.2d 680, 686 (Pa. Super. 1994) (citation omitted).

Here, the conclusion that Gutteridge was dealing with Russial individually is supported by evidence that the trial court deemed credible. Accordingly, we may not disturb that conclusion. *See Company Image Knitwear*, *supra*; *Turney Media Fuel*, *supra*; *Terletsky*, *supra*.

Mindful of our limited role as an appellate court, I dissent from the majority's decision to reverse the trial court's decision to hold Russial personally liable.

With respect to the claim for unjust enrichment, I disagree with the majority that the trial court erred by failing to take into account the commissions from AEP that J3 paid the channel partners. Appellants have produced no evidence that the channel partners have released Appellees from their commission obligations. Therefore, had the trial court discounted the damages award to offset the commissions Appellants paid to the channel partners, Appellees would be left responsible for paying commissions without having received full compensation. Such an award would have been contrary to the standards for promissory estoppel claims. *See Crouse v. Cyclops Industries*, 745 A.2d 606, 610 (Pa. 2000) (promissory estoppel invoked to avoid injustice by making enforceable a promise when promisee relies on the promise and changes his position to his detriment).

Accordingly, because I agree with the majority's disposition of several issues, I concur in part. However, because I disagree with the majority's mandate to vacate the judgment, I dissent.