IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| North Cornwall Township | : | |
| | : | |
| v. | : | |
| | : | |
| George D. Konevitch and | : | |
| Margaret M. Konevitch | : | |
| | : | |
| Appeal of: George D. Konevitch and | : | No. 17 C.D. 2022 |
| Margaret M. Konevitch | : | Submitted: May 26, 2023 |

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                        FILED: September 14, 2023

George D. Konevitch (Konevitch) and Margaret M. Konevitch (collectively, Appellants), pro se, appeal from the Lebanon County Common Pleas Court's (trial court) December 7, 2021 order denying their Motion to Vacate and/or Strike a Municipal Claim/Lien for Fraud Upon the Court (Motion) and affirming North Cornwall Township's (Township) municipal claim/lien (Claim). Essentially, there are three issues before this Court: (1) whether the trial court failed to include its findings of fact and conclusions of law in its December 7, 2021 order; (2) whether the Township and/or its employees and its solicitor (Solicitor) were authorized to, and did properly file, the Claim; and (3) whether the trial court erred by denying the Motion.[1] After review, this Court affirms.

---

[1] In their Statement of Questions Involved, Appellants present seven issues: (1) whether the trial court violated their constitutional rights by failing to include its findings of fact and conclusions of law in its order; (2) whether the trial court's non-existent findings of fact and legal conclusions were arbitrary and capricious; (3) whether the Township and the Township's de facto code enforcement officer violated Appellants' constitutional rights from the start; (4) whether the

Appellants own 2130 Colebrook Road in the Township (Property). By letter dated May 21, 2014 (2014 Letter), then-Township Public Works Director Thomas J. Long (Long) warned owners whose properties bordered the Quittapahilla, Snitz, and Beck Creeks in the Township, including Appellants, that Section 2-E of the *North Cornwall Township, Lebanon County, Pennsylvania Ordinance* (Township Ordinance) No. 196 then in effect[2] prohibited owners from interfering with waterflow in the creeks "by means of damming construction or otherwise, including the failure to remove fallen trees or other debris located on the property." Original Record (O.R.) Notes of Testimony (N.T.) Exhibit (Ex.) 2 (2014 Letter) at 1. The 2014 Letter also stated that Township Ordinance No. 197 then in effect[3] prohibited the accumulation of materials on private properties within waterway flood zones that could cause stream damming. *See id*. The 2014 Letter requested Appellants to inspect the Property and take steps necessary to comply with Township Ordinance Nos. 196 and 197 to prevent damage to other property owners. *See id*. at 2.

---

Township, as a municipal corporation, has authority over mankind and its private property and/or private land; (5) whether the Township and its employees have authority over Appellants; (6) whether the Township and its employees enforce municipal codes, nuisance ordinances, and maintenance codes on mankind, its private property, and/or private land; and (7) whether the Township and its employees are authorized to compel specific performance without a written contract with Appellants regarding their private property and private land. *See* Appellants' Br. at 4-5. However, the Argument portion of Appellants' brief is not "divided into as many parts as there are questions to be argued[,]" nor is there "at the head of each part -- in distinctive type or in type distinctively displayed -- the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent[,]" as required by Pennsylvania Rule of Appellate Procedure (Rule) 2119(a), Pa.R.A.P. 2119(a). Rather, in their brief, Appellants summarize the procedural history, present summaries of various legal principles, and declare only that they did not consent to the "'STATUTORY JURISDICTION' OF THE PRIVATE COLORABLE COURT OF CONTRACT." Appellants' Br. at 34. Although Appellants' brief is rambling and difficult to follow, this Court gleans the restated issues therefrom.

[2] The year for Township Ordinance No. 196 then in effect is not evident in the record.

[3] The year for Township Ordinance No. 197 then in effect is not evident in the record.

On July 25, 2014, Long investigated a complaint from Appellants' northern neighbor (Ebersole)[4] that tall bamboo was migrating from Appellants' Property onto his property and into the Beck Creek (Creek) banks. *See* O.R. January 11, 2021 N.T. (1/11/2021 N.T.) at 17-18, 63. From Appellants' adjacent neighbor Robert Ridinger's (Ridinger) property, Long observed and photographed the bamboo extending from Appellants' Property to the Creek's banks. *See* 1/11/2021 N.T. at 18-19; *see also* Ex. 4. Ebersole lodged further complaints about Appellants' bamboo "numerous times over the course of . . . two, three years[,]" but the Township did not take action against Appellants because, although it is invasive and difficult to remove, bamboo was considered a grass, not a noxious weed. 1/11/2021 N.T. at 22, 82.

In January 2018, Long and Township Highway Foreman Richard Royer (Royer) investigated a complaint Ridinger lodged that some of Appellants' bamboo had died and decayed and was blocking a portion of the Creek and the inlet pipe to Ridinger's pond. *See id*. at 23-28, 69, 100-106; *see also* Exs. 5-7. Based on Long's and Royer's observations, bamboo concentrated on and extending from Appellants' Property into the Creek had created a nuisance.

On February 28, 2018, as then-Code Enforcement Officer and Township Manager (Township Manager) Long issued a Notice of Violation (NOV) to Appellants related to the bamboo, stating therein that Appellants were in violation of Township Ordinance No. 297 (Ordinance) and Section 302.4 of the 2009 International Property Maintenance Code (IPMC).[5] *See* Reproduced Record (R.R.)

---

[4] Ebersole's full name is not included in this record.

[5] In April 2017, the Township repealed Ordinance Nos. 196 and 197, and replaced them with the Ordinance (relating to general nuisances on private property). *See* 1/11/2021 N.T. at 31; *see also* Ex. 9. The Ordinance was in effect when the Township issued the NOV to Appellants. The Township later repealed and replaced the Ordinance with Ordinance No. 315 (relating to general nuisances on private property).

at 1-3;[6] *see also* Ex. 8. The NOV set forth instructions for Appellants to "contact the Township Manager [(Long, in this instance)] within three (3) days of receipt of th[e] [NOV]" to discuss the matter, ordered Appellants to abate the violation by March 29, 2018, and informed Appellants that if they failed to do so, the Township would take the steps necessary to abate the violation and bill Appellants for the costs it incurred. R.R. at 2; *see also* 1/11/2021 N.T. at 32-37. In the NOV, Long further declared that if Appellants did not pay the fees and costs, "the Township's Solicitor [would] take action to place a lien on the [P]roperty." R.R. at 2. Appellants did not contact Long within three days, or otherwise indicate that they intended to abate the nuisance. *See id*. at 36, 46, 59-60.

By a Neutral Response Letter dated March 3, 2018, Konevitch returned the NOV to the Township, stating that the NOV was served on Appellants by mistake, and he did not consent to the action. *See* R.R. at 4. In addition, by a March 17, 2018 document titled Actual Notice and Demand that Konevitch sent to the Township, he declared that the violation was an abatable nuisance for which he was the only victim, he declined to further participate in Long's abuse of legal process, and he warned that he would see Long in federal court if Long pursued a lien against the Property. *See* R.R. at 5-13. Konevitch also stated that he would assess his fees and costs for the litigation against Long, and gave Long 10 days to respond to the March 17, 2018 Actual Notice and Demand, after which he would consider the matter closed. *See* R.R. at 7.

By June 13, 2018 letter, Long, on the Township's behalf, notified Konevitch that since he refused to remove the offending bamboo to unblock the

---

[6] Rule 2173 specifies: "[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Pa.R.A.P. 2173. Because Appellants' Reproduced Record page numbers were not followed by a small a, for ease of reference, this Court will refer to the Reproduced Record pages as Appellants numbered them.

Creek, the Township was authorized to hire a third-party contractor to do the work, unless Konevitch notified the Township by June 22, 2018, that he intended to do it. *See* R.R. at 14; *see also* Ex. 10. Long described that "the contractor will be on the neighboring property and will cut and remove all of the fallen bamboo vegetation to unblock the stream[,]" the Township would invoice Appellants for the contractor's work, and Appellants' failure to pay the Township would result in the Solicitor taking necessary legal action to collect the sum and placing a lien on the Property. *Id.*

Konevitch responded by June 21, 2018 Actual Notice and Demand to the Township, in which he declared: Long failed to timely respond to the March 17, 2018 Actual Notice and Demand; Long lacked authority to contract with a third party at his expense; Konevitch (as a Native American of non-Indian descent, a Pennsylvanian, and an American National) was not subject to Township law because it is a foreign jurisdiction; unless the Township had a higher deed, it could not enter Appellants' private Property; and notified Long that Konevitch was lodging a claim for constructive fraud, mail fraud, and peonage. *See* R.R. at 15-16. Konevitch gave Long 10 days to respond to the June 21, 2018 Actual Notice and Demand, after which he would consider the matter closed. *See* R.R. at 16.

Because Appellants failed to timely abate their violation, the Township hired Penn Turf Landscaping (Penn Turf), which, with access from Ridinger's property, removed the bamboo from the Creek on June 25, 26, and 27, 2018. *See* 1/11/2021 N.T. at 46-48, 102, 107-110; *see also* Ex. 11. By August 28, 2018 letter, the Township produced the $4,400.00 invoice to Appellants for Penn Turf's work, and requested payment from Appellants in that amount by September 28, 2018. *See* R.R. at 17-19; see also 1/11/2021 N.T. at 47-52; Ex. 11.

By September 14, 2018 Actual Notice and Demand, Konevitch declined to reimburse the Township for Penn Turf's costs on the basis that Long

5

failed to timely respond to the June 21, 2018 Actual Notice and Demand, Konevitch was not a party to the contract with Penn Turf, Long did not have Konevitch's power-of-attorney to act on his behalf, and Konevitch was not subject to the Township's laws. *See* R.R. at 20-21. Konevitch added that, since Penn Turf was on the neighbor's property to remove the bamboo, the Township should bill the neighbor, the Township's correspondence constituted another count of mail fraud, and, if the Township persisted, he would seek damages and attorney's fees. *See* R.R. at 21. Konevitch declared that Long's failure to respond within 10 days would be clear and convincing evidence that Long's acts were *ultra vires*. *See id*.

Because Appellants refused to reimburse the Township for Penn Turf's costs, the Township turned the matter over to the Solicitor for collection. *See* 1/11/2021 N.T. at 52. On December 5, 2019, the Solicitor issued a Notice of Intent to Assess Attorney's Fees (Notice) to Appellants, therein affording them 10 days to pay $4,400.00 before it took further legal action, including filing a lien against the Property and assessing attorney's fees pursuant to the Ordinance at a rate of $160.00/hour. *See* R.R. at 22-24; *see also* 1/11/2021 N.T. at 53-54; Ex. 12. The Notice further declared that if Appellants disputed any portion of the debt, the Township would provide verification thereof. *See* R.R. at 23.

By Constructive Notice and Demand dated December 12, 2019, Konevitch acknowledged the Township's Notice, declared that the Township's collection of Appellants' debt had to comply with the Fair Debt Collection Practices Act (FDCPA),[7] and demanded that the Township complete a Debt Collector Disclosure Statement within 10 days. *See* R.R. at 25-30.

By January 2, 2020 letter, the Solicitor provided Appellants with the completed Debt Collector Disclosure Statement and Long's affidavit validating

---

[7] 15 U.S.C. §§ 1692-1692p.

6

Appellants' debt in accordance with the FDCPA and what is commonly referred to as the Municipal Claims and Tax Liens Act (MCTLA).[8]  *See* R.R. at 31-35.  On January 31, 2020, the Township filed the Claim, therein seeking $4,981.80 from Appellants for expenses the Township incurred to abate a nuisance at the Property ($4,400.00), plus costs ($53.80), attorney's fees ($528.00), and interest as allowed by law.  *See* R.R. at 43.1-43.4.

On March 16, 2020, Appellants filed the Motion.  Therein, Appellants appear to claim that the Township's Claim was unsubstantiated and fraudulent; the subject brush and bamboo was located on an adjoining neighbor's property; Appellants did not owe the Township any monies; the Township did not exercise due diligence in validating the purported debt, particularly because the Solicitor did not walk the Property; pursuant to the Declaration of Independence, the Township cannot govern Appellants without their permission; because it is not a *de jure* governing body, the Township is a foreign agency that must be registered with the United States Department of Justice in order to do business; in the absence of a contract, commercial agreement, or power-of-attorney, Long lacked the authority to remove brush and bamboo from the Property; the Township and the Solicitor are bound by the doctrine of respondeat superior for work performed by their employees or agents; the Township willfully and deliberately defrauded Appellants of their private property under the color of law for no legitimate purpose; the Township and the Solicitor committed barratry (i.e., the stirring up of quarrels and suits); and Appellants incurred irreparable injuries and damages as a result.  *See* R.R. at 45-48. Appellants also filed a Praecipe to Schedule a Hearing on the Motion.  *See* R.R. at 44.  On March 20, 2020, the trial court issued a Rule to Show Cause for the Township to state why the trial court should not grant the Motion.  *See* R.R. at 49.

---

[8] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7455.

7

On or about May 18, 2020, Appellants filed in the trial court an Actual Notice and Demand for the Township to file a writ of scire facias. *See* R.R. at 50-55. Appellants also referred to that document as their Affidavit of Defense. *See* R.R. at 53-54; *see also* O.R. Item 9 (Supplemental Affidavit of Defense) at 1. Therein, Appellants continued their ongoing claims, and also asserted that since the Township failed to follow its procedure and first prosecute the NOV in magisterial district court, it lacked jurisdiction over Appellants. *See* R.R. at 50-55.

On June 2, 2020, the Township filed a Writ of Scire Facias in the trial court,[9] and notified Appellants of their opportunity to file an affidavit of defense to the Claim. *See* R.R. at 56-61. On June 23, 2020, Appellants filed a Supplemental Affidavit of Defense, wherein they argued, *inter alia*: (1) their unrebutted Affidavit of Defense was *prima facie* evidence in their favor; (2) the Township issued a false NOV and committed fraud by hiring Penn Turf; (3) the Township failed to prosecute the case in the magisterial district court, thereby depriving Appellants of their civil rights and judicial due process; (4) the Township failed to do its due diligence and determine who owns the property through which the Creek runs; (5) according to their deed, Appellants do not own and do not have authority to maintain the property on which the Township performed the maintenance; and (6) Appellants were entitled to a jury trial. *See* O.R. Item 9;[10] *see also* R.R. at 59-62. On August 12, 2020, Appellants filed a Second Notice/Notice of Default for the Township's failure to

---

[9] "A writ of scire facias is a writ authorized to be issued as a means of enforcing payment of a municipal claim out of the real estate upon which such claim is a lien." *W. Clinton Cnty. Mun. Auth. v. Est. of Rosamilia*, 826 A.2d 52, 56 (Pa. Cmwlth. 2003). "The reason for imposing the lien on the property as opposed to the person allegedly responsible for the delinquency is that the property received the benefits of municipal services, not the person." *City of Phila. v. Perfetti*, 119 A.3d 396, 400 (Pa. Cmwlth. 2015).

[10] Appellants did not include their Supplemental Affidavit of Defense in the Reproduced Record.

respond to their Affidavit of Defense and the Supplemental Affidavit of Defense. *See* R.R. at 36-38.

On November 4, 2020, Appellants filed a Supplemental Affidavit of Defense for the Second Time, reiterating their claims, incorporating their Affidavit of Defense and the Supplemental Affidavit of Defense, and adding: (7) the Township, through Long, lacks authority to issue fines, etc.; (8) the NOV constituted constructive fraud and mail fraud; (9) the Township failed to respond to Appellants' Actual Notices and Demands; (10) neither the Township nor Penn Turf removed bamboo from the Property; and (11) the Township is liable to Appellants for slander, libel, defamation, fraud, acts of barratry, color of law violations, and official oppression. *See* R.R. at 65-71.

The trial court conducted hearings on January 11 and March 31, 2021. By December 7, 2021 order and accompanying opinion, the trial court denied Appellants' Motion and affirmed the Township's municipal claim/lien. *See* R.R. at 116-142. On December 20, 2021, Appellants filed a document that the trial court treated as a request for reconsideration, which the trial court denied by December 22, 2021order. *See* R.R. at 143-175. Appellants appealed to this Court.[11]

By January 7, 2022 order, the trial court instructed Appellants to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Appellants

---

[11] "This Court's scope of review of a trial court's order disposing of a petition to strike a municipal claim is limited to a determination of whether the court abused its discretion or committed an error of law or whether constitutional rights were violated." *Warwick Twp. Water & Sewer Auth. v. Warwick Realty Co., L.P.*, 176 A.3d 387, 393 n.8 (Pa. Cmwlth. 2017) (quoting *Valley Forge Sewer Auth. v. Hipwell*, 121 A.3d 1164, 1167 n.4 (Pa. Cmwlth. 2015)).

On June 7, 2023, Appellants filed a document in this Court titled *Common Law Writ of Praecipe for Assignment of a Standard Oral Argument of Fifteen (15) Minutes*, which this Court deems an application for oral argument, to assert that the Township's brief was not timely filed. The Township opposed the oral argument application on July 3, 2023. Because it appears that the Township's brief was timely filed, this Court denies Appellants' application for oral argument.

filed their Rule 1925(b) Statement on February 11, 2022.[12]  On July 7, 2022, the trial court issued an opinion pursuant to Rule 1925(a), relying on the reasoning in its June 7, 2021 opinion, and adding that Appellants waived their right to demand a jury trial by failing to timely raise that issue to the trial court.[13]  *See* R.R. at 191-195.

Appellants first argue that the trial court failed to include its findings of fact and conclusions of law in its order.  This Court observes that the trial court's December 7, 2021 order does not include its findings of fact and conclusions of law, but the trial court did not violate any law or rule of court by choosing not to do so. Moreover, that same day, the trial court issued a full opinion in support of its order. Although the opinion was not separated into sections marked *findings of fact* or *conclusions of law*, the 25-page opinion clearly included 13 pages of factual findings based on the evidence, and 12 pages setting forth the legal basis upon which it

---

[12] Appellants received the trial court's order on January 12, 2022 but, due to Konevitch's illness, Appellants were unable to timely file their Rule 1925(b) Statement.  On February 15, 2022, Appellants filed their Rule 1925(b) Statement *nunc pro tunc*.  Because the trial court held that it was without jurisdiction to rule on the late-filed Rule 1925(b) Statement, the trial court transferred the matter to this Court.  By March 25, 2022 Order, this Court remanded the matter to the trial court for a determination of whether Appellants should be permitted to file their Rule 1925(b) Statement *nunc pro tunc* and remitted the record.  The trial court conducted a hearing on June 2, 2022 and, on June 9, 2022, the trial court granted Konevitch's *nunc pro tunc* filing request.  On July 18, 2022, the trial court, having accepted Appellants' Rule 1925(b) Statement, returned the record to this Court, which issued a briefing schedule.

[13] The first time Appellants' jury trial demand appears in the record is in the caption of their March 2020 Praecipe to Schedule a Hearing, which the trial court granted.  *See* R.R. at 44. Appellants did not object before, or during, the hearing that they were deprived of a jury trial. Rather, they made that claim for the first time in their Brief in Support of Dismissal of the Case and/or to Vacate and Strike the Unsubstantiated Municipal Claim/Lien filed in the trial court on August 3, 2021 (five months after the second hearing), and in their Rule 1925(b) Statement.  *See* R.R. at 79-80, 103.  This Court has held: "To preserve a legal issue for appeal, an objection must be made at [the hearing].  [*Reilly v. Se. Pa. Transp. Auth.*, 489 A.2d 1291, 1300 (Pa. 1985).]  It is 'not enough to raise new grounds for the first time in post-[hearing] proceedings.'  *Id. . . .*" *Residents of Buckingham Springs v. Bucks Cnty. Assessment Off.*, 60 A.3d 883, 888 (Pa. Cmwlth. 2013).  Accordingly, the trial court properly concluded that Appellants waived the issue by failing to timely raise it to the trial court.

reached its conclusion.  Accordingly, Appellants' claim that the trial court failed to include findings of fact and conclusions of law in its order lacks merit.

Appellants next assert that the Township and/or its employees and the Solicitor were not authorized to, and did not properly file, the Claim, in particular, in a magisterial district court.  However, municipalities only have powers the General Assembly grants them.  *See Robinson Twp., Washington Cnty. v. Commonwealth*, 83 A.3d 901 (Pa. 2013).  As a second class township, the Township is governed by The Second Class Township Code (Code).[14]  In Section 1601 of the Code, the General Assembly stated that the Township's Board of Supervisors "may adopt ordinances in which general or specific powers of the [T]ownship may be exercised[.]"  53 P.S. § 66601(a).

Relevant here, Section 3.01 of the Ordinance generally declared nuisances unlawful.  *See* N.T. Ex. 9 (Ordinance) at 8.  Section 3.01.12.c of the Ordinance made it "unlawful to refuse to cut and/or destroy noxious weeds or other vegetation that has grown to an average height of [10] inches or more[,]" except on property principally used for agricultural purposes.  *Id.* at 23; *see also* R.R. at 1. Section 3.01.12.f of the Ordinance added:

> It shall be unlawful to refuse or fail to maintain planting beds to the point where ornamental plants, shrubs[,] or bushes are permitted to grow in an unkempt fashion extending into . . . right[s]-of-way, private or public property . . . or to permit noxious weeds or other vegetation to grow without restriction to an average height exceeding [10] inches within such designated planting beds[,] or to permit any of the aforementioned conditions to exist.

Ex. 9 (Ordinance) at 23.  Section 302.4 of the IPMC, which the Township adopted in Ordinance No. 263, specified, in pertinent part:

---

[14] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

11

> All *premises* and *exterior property* shall be maintained free from weeds or plant growth in excess of [10 inches]. All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants[,] and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.

codes.iccsafe.org/content/IPMC2009/chapter-3-general-requirements (last visited Sept. 13, 2023); *see also* R.R. at 1.

Section 6.01.1 of the Ordinance authorized the Township's Code Enforcement Officer (Long, in this instance) to enforce the Ordinance. *See* Ex. 9 (Ordinance) at 26. Section 4.01.2.a of the Ordinance further provided, in relevant part:

> Upon such determination of a violation of this Ordinance, [the] Township shall give notice of such alleged violation in the following manner:
>
> a. By initiating and attempting to give notice by telephone or personal visit to the property, and providing a description of the violation, the methods for remedy of the violation and the frame for such remedies to be accomplished, and the possible fines incurred if the violation is not corrected.

*Id*. at 24.

Article VII, Section 7.01.1 of the Ordinance, titled *Violations and Penalties*, permitted the Township to seek fines and penalties for nuisances before a magisterial district justice. *See id*. In the alternative, Article VIII, Section 7.01 of the Ordinance, titled *Remedies*, authorized the Township to issue notices of violation for nuisances and, if the property owner fails to abate the nuisance, the Township could do so, and charge the expenses, costs, and interest related thereto to the person(s) responsible for the violation. *See id*. at 27. Article VIII, Section 701.4 of the Ordinance declared: "The Township may take a lien for the value of the costs of

12

pursuing Ordinance compliance against the real public or private property of the person responsible for Ordinance compliance." *Id.* Moreover, Section 1102 of the Code declares that "[t]he [T]ownship['s] [S]olicitor shall direct and control the legal matters of the [T]ownship[.]" 53 P.S. § 66102. Section 1103 of the Code specifies that "[t]he [T]ownship['s] [S]olicitor shall commence and prosecute all actions brought by the [T]ownship . . . ." 53 P.S. § 66103.

The Township is further subject to "[t]he current procedure for enforcing municipal claims . . . set forth in the MCTLA. 'The [MCTLA] provides for a specific, detailed and exclusive procedure that must be followed to challenge or collect on a municipal lien[.]'" *City of Phila. v. Perfetti*, 119 A.3d 396, 399 (Pa. Cmwlth. 2015) (quoting *City of Phila. v. Manu*, 76 A.3d 601, 604 (Pa. Cmwlth. 2013)). This Court has explained:

> The [MCTLA] authorizes the filing of a claim "arising out of, or resulting from . . . service supplied, work done, or improvement authorized and undertaken, by a municipality," which "shall include all penalties, interest, costs, fines, charges, expenses and fees, including reasonable attorney['s] fees, as allowed by [the MCTLA] and all other applicable laws." Section 1 of the [MCTLA], 53 P.S. § 7101.

*Warwick Twp. Water & Sewer Auth. v. Warwick Realty Co., L.P.*, 176 A.3d 387, 394 (Pa. Cmwlth. 2017).

The Code and the Ordinance clearly authorized Long to issue the NOV to Appellants for a nuisance and for the Solicitor to pursue the lien against Appellants pursuant to the MCTLA. Long issued the NOV based on his observation that bamboo originating from Appellants' Property blocked the Creek and created a nuisance under the Ordinance. When Appellants refused to abate the nuisance, the Township contracted with Penn Turf to remove the offending bamboo and then sought reimbursement from Appellants for the work. Because Appellants refused to

13

reimburse the Township, the Solicitor obtained a lien in accordance with the MCTLA.

The trial court held:

[T]he Township followed the appropriate procedure in response to this situation. Once the existence and cause of the nuisance was ascertained, the Township issued [the NOV] in accordance with Section 4.01 of [the Ordinance] and informed [Appellants] of the violation and provided sufficient time in which the violation could be corrected. [Appellants] were also informed of the potential penalties and the possibility of abatement by the Township if the problem was not corrected. Despite several such notices being sent to [Appellants], they took no action to remedy the problem and the Township was forced to take appropriate measures to correct the problem itself. [Appellants] were informed that this would occur if the problem was not abated and that they would be responsible for any expense incurred as a result. [Appellants] were given notice of the amount due for the remediation of the problem, failed to satisfy the debt, and a municipal claim and lien were properly put in place. Long explained that this was necessary in order to protect the neighboring properties from potential flooding.

With regard to the issue of notice to [Appellants], we note that the Township did not strictly comply with the requirements of Section 4.01.2.a [of the Ordinance] by addressing the problem via telephone or a personal visit to [Appellants]. Long testified that he did visit the site several times after receiving complaints from . . . Ebersole and [] Ridinger, but there was no indication that he or any other Township representative attempted to contact [Appellants] by telephone or a personal visit before the mailing of the violation letters. It appears that Long anticipated personal contact with [Appellants] to be arranged after [Appellants] received the mailed [n]otices and contacted the Township within the three-day period to discuss the nuisance and the process of abatement as required by the [n]otices.

At the hearings, [Appellants] complained that there was no personal contact or offer of help from anyone from the

14

Township. Although it appears that they were also at fault for failing to phone or otherwise make some effort to speak with a Township representative once the violation letters were received, this raises the question of whether the parties could have resolved this matter amicably had either one reached out to the other. However, once proper notice is given to the responsible parties, a municipality may proceed with abatement of a nuisance. [*See*] 23 Summary Pennsylvania Jurisprudence 2d Municipal and Local Law § 19:25 (2d ed. [2021]). [Appellants] did receive ample notice of the violation and of the Township's plan to correct the condition if [Appellants] did not do so. [Appellants'] responses also placed the Township on notice that they did not take responsibility for the condition and that they did not intend to take any action to correct the problem by the written replies to the violation letters. Thus, it appears that the Township had no alternative but to correct the problem itself before damage was incurred by neighboring landowners.

Trial Ct. Op. at 22-24. This Court finds no error in the trial court's reasoning. Accordingly, Appellants' claim that the Township and/or its employees and the Solicitor were not authorized to, and did not properly file the Claim, lacks merit.

Lastly, Appellants contend that the trial court erred by denying the Motion and upholding the Township's lien because they did not own the land from which Penn Turf cleared the bamboo and, thus, they did not violate the Ordinance.

However, this Court has explained:

Municipal claims constitute *prima facie* evidence of the facts averred within the claim. Section 20 of the [MCTLA], 53 P.S. § 7187. Further, the municipal claims constitute conclusive evidence except where they have been specifically denied by an owner's affidavit of defense. *Id.* The owner, as the defendant in a *scire facias* proceeding, bears the burden of overcoming the municipality's *prima facie* case by presenting sufficient evidence that the claims are erroneous. *Gen*[.] *Mun*[.] *Auth*[.] *of the Borough of Harvey's Lake v. Yuhas*, . . . 572 A.2d 1291, 1294 ([Pa. Super.] 1990); *see also Abbottstown Paradise Joint Sewer Auth*[.] *v. Carter*[] (Pa. Cmwlth.,

15

No. 983 C.D. 2007, filed Jan[.] 24, 2008), slip op. at 4 . . . .[FN]9

> [FN]9 Pursuant to Commonwealth Court Internal Operating Procedure § 414(a), 210 Pa. Code § 69.414(a), an unreported opinion of this Court may be cited for its persuasive value and not as binding precedent.

*Warwick Twp. Water & Sewer Auth.*, 176 A.3d at 394.

At the trial court hearings, the Township established that it made Appellants aware in 2014 of the problems creek side vegetation can cause for neighboring properties. After receiving Ridinger's 2018 complaint, Long generally confirmed Appellants' Property lines based on Lebanon County's 2016 Geographic Information System (GIS) aerial overview.[15] *See* 1/11/2021 N.T. at 22, 26, 71; *see also* March 31, 2021 Notes of Testimony (3/31/2021 N.T.) at 34-35, 37-38; Ex. 16. Although Long did not know the precise location of Appellants' Property line, he recalled that he "drew [his] conclusions based on aerial views from [Lebanon] County GI[S], [and from] talking to the neighbors where the boundary lines [are]." *See* 1/11/2021 N.T. at 71. Long was aware that Appellants' Property line did not extend all the way to the west bank of the Creek. *See id*. at 73. Long and Royer testified that the bamboo was 10 to 35 feet tall and was concentrated on and extending from Appellants' Property toward and into the Creek - not coming from adjacent properties bordering on the north, east, or south. *See id*. at 28-29, 58, 68-69, 74, 78, 86-88, 103-104, 109-112; *see also* 3/3/2021 N.T. at 29-30, 40.

To overcome the presumption that the Claim was erroneous, Konevitch called Penn Turf Sales Representative Aaron L. Tyson (Tyson), who testified that Penn Turf entered the Ridinger property to access the bamboo in June 2018, removed approximately 3 to 5 feet of dead bamboo that was 20 to 30 feet tall and had fallen

---

[15] The parties agreed, and the GIS photograph contains the disclaimer that the boundaries are "approximate" and "should not be interpreted as the legal boundary description." Ex. 16.

into the Creek and backed up the water flow. *See* 3/31/2021 N.T. at 46-47, 51-52, 55-58, 63-65, 68-71, 73. Tyson described that the bamboo was matted and damming the Creek, such that Penn Turf had to dredge the bamboo from the Creek to clear the obstruction. *See id.* at 60-62. Tyson confirmed that the bamboo originated from the opposite side of the Creek from Ridinger's property, approximately 20 yards back from the Creek toward the home on the Property. *See id.* at 58, 62, 66. Tyson estimated that Penn Turf removed 22 trailer loads of dead bamboo. *See id.* at 59. Tyson clarified that Penn Turf did not touch Appellants' Property during the project. *See id.* at 70-71.

Konevitch also called Linda Ridinger, who confirmed that, although the Ridingers have never had their property surveyed, she understood that she and Ridinger own the property on both sides of the Creek to the east of Appellants' Property, including the Creek bank on Appellants' side of the Creek up to Appellants' Property line. *See id.* at 78-79, 86; *see also* Exs. 7, 16. She explained that she and Ridinger maintained the banks on both sides of the Creek for approximately 20 years, but the bamboo growth worsened over time to the point it blocked the inflow to their pond, and Ridinger's ill health made it difficult to clear it, so the Ridingers notified the Township. *See id.* at 80-81, 85, 88. Linda Ridinger described that the bamboo was "mostly" growing on Appellants' Property, originating approximately 30 to 40 feet back from the Ridingers' property line, and encroached approximately 3 feet onto the Ridingers' Creek bank and into the Creek. *See id.* at 77-78, 87-89. She did not recall seeing a fence denoting Appellants' Property line. *See id.* at 90. Linda Ridinger stated that she and Ridinger granted the Township access to their property to abate the nuisance. *See id.* at 89.

In addition, Konevitch called Ridinger, who confirmed Linda Ridinger's testimony and similarly asserted that most of the bamboo originated on Appellants' Property and encroached several feet onto the Ridinger property and

17

into the Creek creating a blockage. *See id.* at 100, 102-103, 105-107. He agreed with Tyson that Penn Turf never entered Appellants' Property in June 2018. *See id.* at 108. Ridinger recalled seeing Konevitch hang a yellow rope at what Konevitch felt was Appellants' Property line after Penn Turf cleared the bamboo. *See id.* at 95-96, 105. He did not recall seeing a fence marking Appellants' Property line. *See id.* at 96. Ridinger declared that he would clear bamboo that migrates onto the Ridinger property and Appellants should clear bamboo on their Property. *See id.* at 102-103.

Margaret Konevitch testified that they received all of the Township's letters and Konevitch responded to them. *See id.* at 116, 119. She claimed that when they had been told by other neighbors about problems created by their bamboo, Appellants cut it, dug it up, poisoned it, and took steps they knew to get rid of it, but in this case the Township just issued the NOV, which she perceived as a threat, and then an invoice without helping Appellants figure out how to dispose of the bamboo. *See id.* at 117-122.

Konevitch confirmed his wife's testimony regarding receiving the Township's mailings, and Appellants' attempts to remove and/or kill the subject bamboo over the years. *See id.* at 124, 135. He acknowledged that the bamboo was migrating toward the Creek, but claimed that he was told not to remove vegetation from the bank because the bank would erode. *See id.* at 125. Konevitch admitted that the bamboo was 20 to 25 feet tall, but asserted that "it did not fall into the [C]reek." *Id.* at 125. He added that there are remnants of a fence erected in 1977 at Appellants' Property line, and the bamboo that fell into the Creek grew in the approximately 11 feet of the Ridingers' property from the edge of the water to the fence. *See id.* at 125, 131, 140-141. However, he admitted that he had never had the Property surveyed. *See id.* at 140.

Konevitch further testified:

18

[T]o say that we never ever did anything to control or do anything to alleviate the problem with the bamboo, that is not true. Anything that grows on my side of the fence is my problem. Anything that grows on their side of the fence is their problem.

To make me go over there on that side of the fence is a forced trespass unless they have an agreement with the property owner to allow me to come over and fix that. Now, if that was their intention like they tried to animate [sic] at the last hearing, they could have called me and said, George, we need to talk this over. They never did that.

*Id*. at 131. He acknowledged that photographs admitted into evidence depicted bamboo on the Ridingers' property, but pronounced: "[I]t got there because God makes bamboo grow. Konevitch doesn't make bamboo grow." *Id*. at 139.

The trial court, as fact[-]finder, may believe all, part, or none of the evidence presented. The appellate court is "not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the fact[-]finder." *Abbottsown Paradise Joint Sewer Auth*[.], slip op. at 4-5 (quoting *Turney Media Fuel, Inc. v. Toll Brothers, Inc.*, 725 A.2d 836, 841 (Pa. Super. 1999)).

*Warwick Twp. Water & Sewer Auth.*, 176 A.3d at 394.

Based upon the evidence presented in this case, the trial court upheld the Township's municipal lien, reasoning:

We [] find that the Township has proven the existence of a nuisance which originated on [Appellants' P]roperty. The bamboo from [Appellants' P]roperty had fallen and was completely blocking the stream and the inlet to the Ridingers' pond. The bamboo, which had originated on [Appellants' P]roperty, had also encroached several feet onto the Ridinger[s'] land. The Ridingers had been forced to clean the bamboo out of the [Creek] until it accumulated to the point where they were unable to do so. The bamboo in the [Creek] was two to three feet high and affected the water levels of the pond and the Ridingers were unable to get to the inflow of their pond due to the blockage.

19

This situation falls squarely within the definition of nuisance as set forth in [the Ordinance]; the Ridingers were subjected to annoyance and the disruption of the legitimate enjoyment of their own property due to the uncontrolled spread of the bamboo from [Appellants' P]roperty and the blockage of the stream and the inlet to their pond by the dead and decayed bamboo falling over and into the stream. This condition was caused by [Appellants'] failure to maintain and control the spread of the bamboo on their [P]roperty onto the land of their neighbors, the [Creek] bed, and the [Creek]. The obstruction of the [Creek] endangered the health and safety of others as it posed the danger of flooding of neighboring properties. Despite these conditions being clearly obvious and the notice given to [Appellants] by the Township, [Appellants] denied any responsibility for the problem and failed to take any remedial action.

. . . .

Having established a *prima facie* case that the municipal [C]laim and lien were filed in accordance with the applicable law, the burden shifted to [Appellants] to prove that the claims were erroneous. [Appellants] failed to sustain that burden.

Trial Ct. Op. at 21-25 (italics added).

Although it did not make explicit witness credibility determinations, the trial court clearly credited Long's, Royer's, Tyson's, and the Ridingers' testimony over Appellants' testimony regarding whether the offending bamboo originated from Appellants' Property. Because substantial record evidence supported the trial court's findings, this Court cannot disturb them. *See Warwick Twp. Water & Sewer Auth.* Accordingly, this Court agrees with the trial court that Appellants failed to meet their burden of overcoming the Township's *prima facie* case and, thus, the trial court properly upheld the Township's lien.

For all of the foregoing reasons, the trial court's order is affirmed.

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

North Cornwall Township         :
                                   :

        v.                            :
                                   :

George D. Konevitch and       :
Margaret M. Konevitch       :
                                   :

Appeal of: George D. Konevitch and  :   No. 17 C.D. 2022
Margaret M. Konevitch       :

PER CURIAM                  O R D E R

AND NOW, this 14th day of September, 2023, George D. Konevitch's and Margaret M. Konevitch's Common Law Writ of Praecipe for Assignment of a Standard Oral Argument of Fifteen (15) Minutes is DENIED.

The Lebanon County Common Pleas Court's December 7, 2021 order is AFFIRMED.